## PETITION OF OBED H. NORDSTROM.

FOR A WRIT OF MANDAMUS TO THE COURT OF QUARTER SESSIONS OF JEFFERSON COUNTY.*

Argued October 10, 1889—Decided October 28, 1889.
[To be reported.]

1. The provision of the wholesale license act of May 24, 1887, P. L. 194, that licenses to dealers, brewers, distillers, bottlers, etc., shall be granted " in such manner as is provided by existing laws," does not incorporate into that act the discretionary powers conferred upon courts by the act of May 13, 1887, P. L. 108; Pollard's Petition, ante, 507; Prospect Brewing Co.'s Petition, ante, 523.
2. In the absence of any local law in force in Jefferson county to the contrary, the general act of March 22, 1867, P. L. 40, a supplement to the act of March 31, 1856, P. L. 200,† is in force in said county, and is to be taken as the existing law therein, referred to in the provision quoted from the said act of May 24, 1887, P. L. 194.
3. The act of March 22, 1867, P. L. 40, places wholesale licenses and retail licenses upon the same plane, and confers upon the Courts of Quar-

---

* This case, though belonging to the Western District, is reported here, on account of its relation to the license cases preceding.

† See the opinion of STEWART, P. J., in Gordon's Application, 7 Pa. C. C. R. 130, as to the title of the act of March 22, 1867, P. L. 40.

Statement of Facts.

ter Sessions the same discretion in granting or refusing a wholesale license as in the case of an application for a retail license: Reed's Appeal, 114 Pa. 452.

4. The Court of Quarter Sessions, in the exercise of a lawful discretion, may refuse to approve the bond accompanying an application for license, when the name of a surety upon the bond and to the jurat as to the sufficiency thereof was erased when presented, and the erasures were without explanation.

5. Wherefore, when the return to an alternative writ of mandamus sets forth as grounds for the refusal of a wholesale license in said county, such a defective bond, and that the license was refused because, in the opinion of the court, the conservation of the public peace and morals demanded it, the peremptory writ will be refused.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 181 October Term 1889, Sup. Ct., (W. D.)

On August 3, 1889, the petition of Obed H. Nordstrom was presented to the justices of the Supreme Court, representing:

That he was a citizen of Jefferson county, Pennsylvania; that on January 12, 1889, he filed his petition and bond in the Court of Quarter Sessions of Jefferson county, to No. 27 February Sessions 1889, praying the said Court of Quarter Sessions of Jefferson county to grant him a wholesale liquor license in the township of Young, in said county of Jefferson, pursuant to the terms of the act of assembly of May 24, 1887. The full text of said petition and bond, and all proceedings had thereon in said court were fully set forth in a certified copy of the same. That pursuant to said petition and bond so filed, and duly advertised according to law, at a Court of Quarter Sessions, then and there holden, in and for the county of Jefferson, on February 19, 1889, the said court refused to grant him a license as prayed for; that said refusal was illegal, as he verily believed, no remonstrance or objection having been filed in said court, or objection made in said court to the granting of said license; praying that a writ of alternative mandamus be awarded directed to the judges of the said Court of Quarter Sessions, commanding them, etc.

The said writ having been awarded and served, Theophilus S. Wilson, president judge, and J. W. Foust and Henry Truman, associate judges of the Court of Quarter Sessions, made a return which in part was as follows:

That Obed H. Nordstrom, on January 12, 1889, filed his petition and bond for a distillers' or manufacturers' license for "the sale of spirituous liquors, by measure not less than one gallon, of his own manufacture," in the township of Young, county of Jefferson:

That on February 19, 1889, the said application came on to be heard and, after due consideration it was refused and final judgment was regularly entered by the Court of Quarter Sessions of Jefferson county on the record of the said court.

1. On the hearing and consideration of the application, the court found that it was a necessary qualification for an applicant for distillers' or manufacturers' license, that the applicant should either be a distiller at the time the application was heard, or that he should have been, within a reasonable time before the hearing.

Obed H. Nordstrom was not a distiller or manufacturer of spirituous liquors on February 19, 1889, and had not been at any time since on or about February 24, 1885, at or about which time his distillery was burned and had not been rebuilt, and he had made no visible attempt towards its rebuilding or towards the further manufacture of spirituous liquors. He had a distillers' license for one year after February 28, 1888, during the currency of which, in connection with the time which elapsed after the burning of his distillery and prior to the date last named, he was afforded ample time to dispose of the small stock of his product which was left on hand at the date of the destruction of his distillery. A further license, after a period of nearly four years, was regarded by the court as unreasonable and tending to establish as a precedent an evasion. of the license laws of the commonwealth.

No remonstrance was filed, but all the facts above stated were well known to the court from the record of the court in this case, and the records and testimony which were before the court, in other proceedings in the Court of Quarter Sessions and in the Court of Common Pleas, to which Obed H. Nordstrom was a party, and of which the court took judicial notice.

2. The court held that it was a prerequisite to the granting of a distillers' license, under the provisions of the 3d section of the act of March 31, 1856, and the 1st section of the act of April 20, 1858, which together constitute the "existing law"

referred to in the act of May 24, 1887, that an applicant for a distillers' license should have had his distillery returned, classed and assessed agreeably to the provisions of the act of April 10, 1849, and, by the 6th section of the act of April 20, 1858, this "requirement" of the law should be enforced by the court. The distillery of Obed H. Nordstrom was not appraised, classed or assessed under the act of 1849, nor under any other law of the commonwealth, for either the year 1888 or the year 1889.

3. The court decided that an applicant for a distillers' license was by law required to file a bond, which should be approved by the court; and that it was the duty of the court to adjudge upon the sufficiency and regularity of the bond, and, if the bond was either insufficient or substantially irregular, to refuse the license.

Obed H. Nordstrom filed a bond at the date of the filing of his application. It was presented for the approval of the court at the hearing. The bond appeared to have been signed and sealed by Obed H. Nordstrom, Henry Ernst, T. Pantall and Jacob Hoch, in the order named.

After the signing and sealing, the name of T. Pantall appeared to have been erased. No note or explanation of this erasure appeared on the bond, nor was any evidence offered to explain it. This erasure, if made after the bond was signed by the other sureties, might have jeopardized a recovery. This was such an irregularity, when taken in connection with the additional fact that T. Pantall appeared before a justice of the peace, with the other sureties, and was qualified to the sufficiency of the bond, and his signature to the jurat was also erased, apparently after being signed by the justice, that the court, in the exercise of its judicial discretion, refused to approve the bond.

\* \* \* \* \* \* \* \*

5. That the 2d section of the act of May 24, 1887, only authorizes courts to grant licenses to distillers as was provided by existing laws.

The 6th section of the act of April 20, 1858, was, at the time of the passage of the act of May 24, 1887, an "existing law" and as such is still in force. The provisions of that section limit the power of the court to grant distillers' license to "citizens of the United States, of temperate habits and good

moral character." The titles to both the act of 1856 and the act of 1858 show that the intent of these acts was "to regulate the sale of intoxicating liquors." The several sections comprising both of these acts show that the "regulation" contemplated by them was to restrain the sale of intoxicating liquors in the interest of the peace and welfare of the community. The act of 1887, by its reference to and adoption of these acts re-enacts their intent. It emphasizes that intent by authorizing any person to appear as an amicus curia to oppose the granting of the license, without becoming a legal party or without joinder of issue as such. It extends the range of evidence and information, by authorizing an exception to the common law rules of evidence, so as to embrace petitions, remonstrances and the oral communications of counsel. In the interpretation of the evidence and information, which are admissible, and on which courts are authorized to act, in discussing the 3d section of the act of May 13, 1887, which is in substance identical with the 2d section of the act of May 24, 1887, and, on a cognate subject, in the case of Raudenbusch's Petition, 120 Pa. 342, your honorable court, in full recognition of the beneficent intent of the law (PAXSON, Justice, delivering the opinion), declared that "In order to perform this duty properly (the granting of license), the act of assembly has provided means by which the conscience of the court may be informed as to the facts; it may hear petitions, remonstrances or witnesses, and we have no doubt the court may in some instances act of its own knowledge. The mere appearance of an applicant for license, when he comes to the bar of the court, may be sufficient to satisfy the judge that he is not a fit person to keep a public house. The judge is not bound to grant a license to a man whom he knows to be a drunkard or a thief, or has actual knowledge that his house is not necessary for the public accommodation. The object of evidence in such cases is to inform the conscience of the court, so that it can act intelligently and justly in the performance of a public duty. While the act in deciding in such cases is perhaps quasi-judicial, the difference between the granting or withholding of a license, and the decision of a question between parties as to a private litigation, is manifest. Neither the petitioner nor any other person in this state has any property in the right to sell liquor."

Statement of Facts.

That the intent of the act of May 24, 1887, is of twofold character is clear. One of its purposes is to provide revenue; the other is to so regulate the sale of liquors as to secure the public peace and welfare by limiting the sale of liquors. If revenue had been the sole purpose, it would have been useless and perhaps worse than useless, to limit the right to sell to citizens of the United States, or to persons of temperate habits and good moral character; for the money of the foreigner, the intemperate or immoral man is equally as valuable as that of the best citizen. In entering judgment in this case, the Court of Quarter Sessions believed itself to be under obligation to recognize the effect that the granting of this license would be likely to have upon the public peace and morals in that community, where sufficient licenses had been granted. In so doing, in accordance with the general judicial interpretation of the acts of 1856, 1858, 1867 and 1875, it was held in this case that the Courts of Quarter Sessions were invested with a reasonable judicial discretion, not subject to review, to be exercised according to the intent of the several laws to restrain such sales of liquors as were certainly known by the court to be pernicious to the public morals and destructive of the public peace.

The place at which the liquor was proposed to be sold by this applicant is in close proximity to three large collieries, at which, at moderate estimate, from fifteen hundred to two thousand miners are employed; many of them are of foreign birth and are ignorant of the laws of the commonwealth and of the American language. Breaches of the peace have been common, and in several instances homicides among this class of people have been largely traceable to the use of intoxicating liquors. These facts are well known to the court; no remonstrance nor evidence was offered, but from knowledge possessed by the court, largely acquired from the hearing of civil and criminal causes from that locality, within the past three years, sufficient facts came to the knowledge of the court to satisfy its conscience that the conservation of the public peace and morals demanded the refusal of the license.

As, therefore, the petitioner was not a distiller at or near the time applied for his license; his distillery has not been assessed or classified; his bond was irregular; the term of the court

at which final judgment of refusal was entered had expired; and as from the facts which were within the knowledge of the court it was satisfied that a granting of the license would be likely to promote lawlessness and immorality and endanger the public peace, your respondents respectfully decline to reconsider the judgment unless otherwise directed by your Honorable Court; but will cheerfully and promptly abide by and act upon such judgment, decree or order as your Honorable Court may see fit to make.

They, therefore, pray, etc.

*Mr. C. M. Brewer*, for the petitioner.

Counsel cited and relied upon Prospect Brewing Co.'s Petition, ante p. 507.

*Mr. C. Z. Gordon*, for the respondents.

Counsel submitted no printed briefs.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a writ of alternative mandamus, directed to the judges of the Court of Quarter Sessions of Jefferson county, commanding them to show cause why they should not grant a wholesale liquor license to the petitioner. His petition, as filed in the court below, sets forth, inter alia, "That he is an applicant for a wholesale liquor license under the terms of the act of assembly of May 24, 1887; that his residence is Young township, in the county of Jefferson; that he is a citizen of the United States; that the place for which a license is desired was formerly a U. S. bonded warehouse, near the residence of the petitioner in said county, and that the business to be conducted at said house is the sale of spirituous liquors by measure not less than one gallon, of his own manufacture," etc.

The court below refused to grant the license prayed for and in answer to our writ made return, inter alia, (*a*) that the petitioner was not a distiller or manufacturer of spirituous liquors at the time of the application, and had not been at any time since on or about February 24, 1885, at or about which time his distillery was burned and had not been rebuilt, nor had any visible attempt been made to rebuild it; (*b*) that it was a prerequisite to the granting of a distillers' license that the ap-

plicant should have had his distillery returned, classed and assessed agreeably to the provisions of the act of April 10, 1849, which had not been done; and (c) that the bond filed by the petitioner was not in conformity with law. Upon this point the return sets forth:

"Obed H. Nordstrom filed a bond at the date of the filing of his application. It was presented for the approval of the court at the hearing. The bond appeared to have been signed and sealed by Obed H. Nordstrom, Henry Ernst, T. Pantall and Jacob Hoch, in the order named. After the signing and sealing the name of T. Pantall appeared to have been erased. No note or explanation of this erasure appeared on the bond, nor was any evidence offered to explain it. This erasure, if made after the bond was signed by the other sureties, might have jeopardized a recovery. This was such an irregularity, when taken in connection with the original fact that T. Pantall appeared before a justice of the peace with the other sureties and was qualified to the sufficiency of the bond, and that his signature to the jurat was also erased, apparently after being signed by the justice, that the court, in the exercise of its judicial discretion refused to approve the bond."

We do not think the court below was bound to approve such a bond as this. The commonwealth was entitled to a clean bond, one which upon its face did not require explanation. This bond was not so. Its mere appearance was suggestive of a law-suit. As the bond was not such as required by law, the petitioner had not complied with the statute, and he was not entitled to the license he asked for. This renders it unnecessary to discuss the other matters, (a) and (b), previously raised by the return. We might well stop here, but there are public reasons, as will be seen hereafter, why we should dispose of another and the main question presented by this record.

The learned judges make further return, in substance: That the second section of the act of May 24, 1887, only authorizes courts to grant licenses to distillers as was provided by existing laws; that by the existing laws in force at that time, the Courts of Quarter Sessions might in their discretion refuse to grant a wholesale license whenever in their judgment such license would be injurious to the public welfare, and that in the opinion of the court the conservation of the public peace

and morals demanded the refusal of this license. The learned judges say in conclusion that they " will cheerfully and promptly abide by and act upon such judgment, decree or order as your honorable court may see fit to make."

The tone of this return is unexceptionable. There is a dignified statement of the law as the learned judges below understand it to be, without a trace of insubordination, or the assumption of superior wisdom. At the same time, they express an entire willingness to cheerfully follow our rulings in case they are mistaken as to the law. This graceful submission to the authority of this court is the more to be commended, as it is in sharp contrast to the recent utterances of one or more of the Courts of Quarter Sessions in this state in dealing with the license question.

The learned judges of the court below were right in holding that the present case is not ruled by Pollard's Case, or that of the Prospect Brewing Company, decided last June, and to be found in Weekly Notes of Cases of July 5th; [ante, pp. 507, 523.] Those cases were decided upon the local laws in force in the county of Allegheny and city of Philadelphia, which we held to be the "existing laws" referred to in the wholesale act of May 24, 1887, P. L. 194. Subsequent reflection has satisfied us of the entire soundness of that ruling. Indeed, it would be difficult to construct even a plausible argument in support of the contrary view. The attempt to write into that act the provisions of the retail act of May 13th, was so palpably erroneous, and so wide a departure from every recognized principle for the interpretation of statutes, that no further discussion of it is necessary. Hence it follows logically that the granting of wholesale licenses must be regulated by the discretion which "existing laws" conferred upon the Court of Quarter Sessions, at the time of the passage of the act of May 24th. At that time, in Allegheny county and Philadelphia there was no discretion at all, beyond requiring that the applicant was a citizen of good moral character and temperate habits. The Court of Quarter Sessions had nothing to do with granting such licenses; it was done by another officer, and the license was a matter of right upon payment of the fee. It is at least possible that when the legislature passed the wholesale act of May 24th, they overlooked the fact that licenses in Allegheny and Phila-

delphia were regulated by local laws having no application to the rest of the state, and that those local laws, and no other, were the only "existing laws" to which the act of May 24th could possibly apply. That those "existing laws" in the localities referred to, are a great evil and have been endured for years against the protest of thousands of the best citizens of those cities, is a fact as painfully clear to us as it is to any one. We do not make the law, however; we merely interpret or declare it. This particular law was the work of the people themselves, through their duly constituted representatives. In our decisions in the cases referred to, we endeavored to declare what the law was so plainly and emphatically that the people could see exactly what they had done, and, if dissatisfied with their work, could amend the law through their legislature. We have no such power.

In Pollard's Case, and the Prospect Brewing Case we decided what was before us and nothing more. If we had gone further and declared the law as applicable to the state outside of Allegheny county and Philadelphia, we would have decided it without a case before us, and without the aid of an argument. Our opinion would have been mere dictum, and would have bound no one, not even ourselves. The wisdom of confining a decision to what is before the court, becomes daily more apparent with increased judicial experience. It never occurred to us that the professional, much less the judicial mind, could possibly construe a decision upon local laws, and which was therefore necessarily local, to have any application to the rest of the state where such local laws had no existence. In this, however, we were mistaken. We are informed that some judges throughout the state have felt themselves constrained by our decision to grant wholesale licenses, and, in one instance at least, a judge who thought our decision was general, refused a license by an act which was evidently meant for insubordination. The insubordination, however, was merely in intent, as the learned judge unconsciously followed our ruling and entered a lawful judgment without intending it. Several of the Quarter Sessions judges have, however, taken another and the correct view of this question. I have now before me a copy of the Weekly Notes of Cases for September 13, 1889, in which I find carefully prepared opinions upon

Opinion of the Court.

this question by Judge Stewart of Franklin county and Judge Yerkes of Bucks county,* in each of which, while following strictly in the line of our decisions in the Philadelphia and Allegheny cases, they yet hold that said decisions have no application to the rest of the state. This clearly appears from the elaborate and able opinion of Judge Stewart, a portion of which I will take the liberty of extracting.†

"It seems to have been assumed by the courts below [Quarter Sessions of Allegheny and Philadelphia], that by existing laws was meant the earlier act of May 13, 1887, which did unquestionably, by its very terms, commit the granting of licenses very largely to their discretion. Herein error was committed, for, as is clearly shown by the opinion of the Chief Justice, the two acts have no relation to each other whatever, the one being a restraining statute, while the other, relating to wholesale licenses, was enacted for the purpose of revenue solely. It is unnecessary to quote here at length the several reasons advanced to show that it could not have been the legislative intent that the earlier act of the 13th was to be read into the later act of 24th of May. It is enough to say that the whole purpose or scope of the argument of the court is to show that by the term 'under existing laws' was not meant the retail act of May 13, 1887, but such other laws as related to wholesale licenses and which remained unrepealed. In the Pollard Case, the existing law was the local act of 1872, relating to Allegheny county exclusively. In the Prospect Brewing Co. Case, the existing laws were those which related to the city of Philadelphia exclusively. And in neither case did the existing law vest any discretion in the Quarter Sessions court, where the qualification of the applicant was conceded. With this plain and explicit interpretation of the act of May 24th by the Supreme Court before us, we have but to determine what was the existing law in regard to wholesale licenses in Franklin county at that time. Certainly it was not the act of May 13th; that much has been settled beyond all dispute. It could not have been the act of 1872, which determined the Pollard Case; for this act was local in its operations, being limited to Alle-

---

* Perhaps, McBride's Application, 7 Pa. C. C. R. 77.
† See Gordon's Application, 7 Pa. C. C. R. 130.

gheny county. Nor was it the law governing the granting of license in Philadelphia, under which the Prospect Brewing Co. Case was decided; for in Philadelphia, prior to the act of 1887, the courts had nothing to do with the granting of license to sell liquor, as we shall see further on. What, then, was the 'existing law' as applicable to Franklin county, and, indeed, the entire state, excepting those localities which were under the operation of special statutes?"

The learned judge then proceeds to discuss very clearly and at length the legislation upon this subject and comes to the conclusion that the "existing law" in Franklin county and throughout the state, excepting where interfered with by local statutes, was the act of March 22, 1867, P. L. 40. In this he was clearly right.* Our attention has not been called to any local law in force in Jefferson county, in regard to the granting of wholesale licenses. It follows that the general law of 1867 is in force there and is the "existing law," referred to in the act of May 24, 1887.

We do not think it necessary to discuss the act of 1867 at length. It places wholesale and retail licenses upon the same plane, and confers upon the Courts of Quarter Sessions the same discretion in granting or refusing a wholesale license as in the case of a retail license. It makes no distinction between them. This has been the uniform construction given to that act by the Courts of Quarter Sessions throughout the state for many years, with very rare exceptions if any. Even if we doubted the correctness of such construction, we would be loth to disturb a principle which had received the universal approval of so large a number of distinguished jurists. But so far from doubting it, the construction referred to was distinctly approved by this court in Reed's App., 114 Pa. 452. This and some other cases were not referred to in Pollard's Case and that of the Prospect Brewing Company, for the reason that they had no application: we were then considering the local acts in force in Allegheny county and the city of Philadelphia; not the act of 1867, which is a general law. This is too plain a matter to require further discussion.

While it is a delicate matter for this court to criticise the

---

* See Gordon's Application, 7 Pa. C. C. R. 130.

act of a co-ordinate department of the government, we must be permitted to say that in our judgment the law in regard to wholesale licenses contains some very serious defects. We need refer to but one, the provision that a wholesale dealer may sell by the quart. It seems a perversion of terms to call a person who sells liquor by the quart a wholesale dealer. It is practically a retail traffic and of the worst character. But we will not pursue the matter further. The whole subject is earnestly commended to the attention of the legislature.

The peremptory mandamus is refused.

