# Indian Brewing Company's License.

*Liquor laws—Brewer's license—Necessity—Unfitness of applicant.*

1. In an application for a brewer's license under the act of 1891 the question of necessity does not arise because eliminated by the statute and the inquiry of the court is limited to the fitness of the applicant.

2. If the applicant be a corporation its unfitness must be established by showing the commission of unlawful acts by the directors, officers, or authorized agents. This may be done by showing sales on Sunday, or to minors, or to persons of known intemperate habits, or by establishing other violations of the liquor laws.

3. When the record is made up by the original application, the additional petitions favoring the license and the remonstrances against the granting of it which only contain the naked averment that the "applicant is an unfit corporation to be licensed," the court is not warranted in finding as a conclusion of law in an opinion filed that the unfitness of the applicant is thus established by the weight of the evidence.

4. When the commonwealth chartered the corporation it stamped it as fit to do the business for which it was created, but although made fit by the act of incorporation to engage in the business of brewing liquors it may become unfit within the meaning of the license laws by corporate acts committed in violation of law.

5. The number and character of the signers should have great weight with the court especially in those cases where the question of necessity arises, but where violations of the law are relied on to defeat the application, numerously signed petitions or remonstrances by persons without knowledge of any unlawful act having been committed, should have no weight in determining whether there had been any violations of the law. In no case is the judgment and discretion of the court absolutely bound by the number and character of the signers, but in every instance the final judgment is that of the court and must be so considered.

6. The form of the order on reversal is within the power and discretion of the appellate court reviewing the case.

MESTREZAT, POTTER and STEWART, JJ., dissent.

Argued Oct. 12, 1909. Appeal, No. 187, Oct. T., 1909, by the Indian Brewing Company, from judgment of the Superior Court, April T., 1909, No. 181, affirming judgment of Q. S. Indiana Co., Dec. T. 1908, No. 17, refusing a liquor license in case of Indian Brewing Company's License. Before MITCH-

ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Petition for a brewer's license.  Before TELFORD, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was order refusing a license.

*Harry White,* with him *D. B. Taylor,* for appellant.—The judgment of the court as to the personal fitness of the applicant involves considerations of residence, citizenship, interest in other places where liquor is made or sold, conduct in regard to previous license, etc., applying equally to all kinds of licenses asked for.  These matters will be presumed to have been considered: Gemas's License, 169 Pa. 43; Donoghue's License, 5 Pa. Superior Ct. 1; Gross' License, 161 Pa. 344; Prospect Brewing Co.'s Petition, 127 Pa. 523.

*John H. Pierce,* with him *H. E. Anderson,* for appellees.— In an application for license there must be a judicial hearing and if the license is refused the refusal must be for a legal reason.  Where these two points appear the appellate court will not discuss the correctness of the result reached by the court below: Gemas's License, 169 Pa. 43; Doberneck's App., 1 Pa. Superior Ct. 99; Brown's App., 2 Pa. Superior Ct. 63.

The unfitness of the applicant is a legal reason for the refusal of this license and also under the decisions of the Supreme and Superior Courts: Mead's License, 161 Pa. 375; Gemas's License, 169 Pa. 43.

When a license has been refused after a hearing the presumption on appeal is that the refusal was for a legal reason unless the contrary affirmatively appear: Free's License, 33 Pa. Superior Ct. 348; Sweeney's License, 11 Pa. Superior Ct. 569.

The statutes under which this application is made make no distinction between natural and artificial persons: Pittsburg Brewing Co.'s Wholesale License, 12 Pa. Superior Ct. 129.

From the earliest times corporations have been held liable for torts: Chestnut Hill & Spring House Turnpike Co. v. Rut-

ter, 4 S. & R. 6; National Bank v. Graham, 8 W. N. C. 361; Erie City Iron Works v. Barber & Co., 106 Pa. 125.

Where a license has been refused the presumption is that the court refused the license for a legal reason and this applies to wholesale as well as retail licenses: Black Diamond Distilling Co.'s License, 33 Pa. Superior Ct. 649; Reynoldsville Distilling Co.'s License, 34 Pa. Superior Ct. 269.

OPINION BY MR. JUSTICE ELKIN, November 5, 1909:

The appellant brewing company, a domestic corporation, was refused a license on the sole ground of the applicant being an unfit corporation to be licensed.  The learned judge of the quarter sessions filed an opinion in which the reason for refusing the license and the character of the weight of the evidence relied on to sustain the order of refusal are clearly stated. This opinion in its entirety is as follows, to wit: "At the hearing of this application there were presented petitions favoring the application and remonstrances against the granting of the license, by reason of the unfitness of the applicant.  The petitions filed contained the names of about three thousand residents of the county and the remonstrances the names of about five thousand residents of the county entitled to the court's consideration.  Of the remonstrants about two thousand were men and three thousand, women.  From an examination of these petitions and remonstrances, having due regard to the number and character of the petitioners and remonstrants, we find that the weight of the evidence rests with the remonstrants and that the unfitness of the applicant is established by the weight of the evidence.  Whenever in the opinion of the court this fact should be found from the evidence, the statute under which the application is made requires that the license shall be refused."

An examination of the opinion shows that the question of fitness was determined at the hearing upon the record made up by the application, the additional petitions favoring the license and the remonstrances filed against the granting of it. The record thus made up forms the pleadings in the case and is now properly before this court for review: Brewing Com-

pany's Petition, 127 Pa. 523. There is thus presented for determination the narrow question, Does the weight of the evidence gathered from the petitions and remonstrances furnish a legal reason for refusing the license? The only averment contained in the remonstrances is that the applicant is not a "fit corporation" to be licensed, and upon this naked averment more numerously signed by persons who objected to the granting of the license than by those who favored it, the learned judge found that the unfitness of the applicant had been established by the weight of the evidence. The application was made under the Act of June 9, 1891, P. L. 257, which relates to wholesale dealers, brewers, distillers, rectifiers, compounders, bottlers, storekeepers and agents. The most casual reading of this act will show that the draughtsman had in mind primarily the granting of licenses to natural persons, and the phraseology as well as the requirements followed this primary purpose. As for instance one of the jurisdictional facts to be averred in the application is the place of birth of the applicant, and, if a naturalized citizen, when and where naturalized. While this is an imperative requirement of the act as applied to natural persons, it cannot of necessity apply to a corporation. There are other statutory provisions and requirements which cannot in the very nature of things apply in the same manner to natural and artificial persons. While the obvious purpose of the act under which this application is made is to regulate the granting of licenses to individuals, this court in order to give general effect to the spirit and purpose of the license laws in restraining the sale of liquors, has held that corporations created for the purpose of manufacturing and selling liquors, come within its purview, and that the proceedings in the granting of licenses to such corporations are assimilated as far as may be to the licensing of natural persons. The assimilative process, however, must necessarily have due regard to the natural and legal distinctions relating to each class of applicants. There can be no doubt that the words "fit persons" used in the act were intended to apply primarily to individuals, and the question raised by this record is in what manner ought these words be

made applicable to a corporation seeking a license. In determining the fitness of a natural person and of a corporation very different questions arise. In the case of an individual the qualities of the man, such as moral character, temperate habits, business integrity, citizenship and other kindred matters, are the important and frequently the controlling considerations with the court. With corporations the inquiry is different. A corporation has no personal attributes and must be judged by its corporate acts. In the present case the only averment in the remonstrances upon which the court based its finding is that the applicant is not a "fit corporation" to be licensed. This is clearly not sufficient. This corporation was created by the commonwealth with the authority to do the business in which it is engaged. To hold upon the naked averment of an individual or a large number of individuals that a corporation is not fit to engage in the business for which it was created would be to challenge the power of the legislature to authorize its incorporation and such a contention could not be seriously made. Of course, a corporation made fit by the act of incorporation to engage in the manufacture and sale of liquor may become unfit within the meaning of the license laws by corporate acts committed in violation of law by its directors, officers and authorized agents. In this sense the fitness of a corporation presenting an application for a license may be inquired into. When unlawful acts such as selling on Sunday, or to minors, or to persons of known intemperate habits, or any other violations of the law, are relied on to defeat the application, the evidence whether presented in a remonstrance or produced by witnesses at the hearing must establish to the satisfaction of the court the unlawful acts complained of. Such evidence must come from persons who know the facts, and numerously signed petitions or remonstrances expressing the views of the signers on the license question generally can have no weight in determining whether particular sales had been made, or specific acts had been committed, in violation of law.

Again the learned judge who passed upon the application in the opinion above quoted states in substance that the

petitions filed contain the names of about 3,000 residents of
the county and the remonstrances the names of about 5,000
residents entitled to consideration, and having due regard to
the number and character of the signers, he finds the weight
of the evidence to be with the remonstrants and that the un-
fitness of the applicant is thus established.  As has been
hereinbefore pointed out, the unfitness of a corporation can-
not be established in this manner, and it is immaterial which
side to the controversy preponderates in numbers.  If, how-
ever, it was intended to announce the principle that the
judgment and discretion of the court are absolutely and con-
clusively bound by the preponderating number of the peti-
tioners or remonstrants, such a conclusion would be clear
error.  This in effect would amount to a substitution of the
wishes or convictions of a majority of the signers for the judg-
ment of the court, and this is not the law.  The act imposes
upon the court the duty to hear and determine, and the judge
must decide whether the weight of the evidence, or all of it,
makes out a case which in the exercise of a legal discretion
requires a refusal.  Having due regard to the number and
character of the signers does not mean that in a judicial pro-
ceeding the issue resolves itself into a problem in arithmetic
in which the court simply adds the columns and announces
the result.  In the granting of licenses to wholesale and retail
dealers the question of necessity, applicable alike to corpora-
tions and to natural persons, is of first importance, and in
such cases nearly every resident of a community has a fixed
opinion upon this question which can as well be indicated by
signing a petition or remonstrance as in any other manner.
In an issue of this kind the number and character of signers
should have great weight with the court.  As to a brewing
company the question of necessity cannot arise because it is
so expressly written in the law, and if the applicant be a cor-
poration, its unfitness must be established by evidence show-
ing the commission of unlawful acts.  If the applicant be an
individual, moral character, temperate or intemperate habits,
business integrity, and other personal qualities may always
be inquired into.  In such a case, however, the evidence

whether by remonstrance or by oral testimony should come from persons who know the facts relied on to establish the unfitness of the applicant in the respects charged. If the applicant be a corporation, questions of moral character, intemperate habits and other personal qualities cannot be raised because in no proper legal sense can such attributes relate to a corporate entity. The only method of establishing the unfitness of a corporation is to show that in the conduct or management of its business it has been guilty of violating the law. It is clear, therefore, that in the hearing of such an application numerously signed petitions or remonstrances by persons without knowledge of any unlawful act or acts having been committed should have no weight in determining whether the applicant had been guilty of violating the law.

The learned Superior Court in reviewing this case suggested that the language of the opinion permits the presumption that other evidence besides the remonstrances may have been considered in determining the propriety of granting the application. We do not so read or understand the language used. No one can read the opinion and give reasonable interpretation to its meaning without concluding the learned judge who wrote it meant what he said and said what he meant. He has specifically stated the evidence upon which he relied and has given the reason which moved him to refuse the application, and we are not at liberty to presume he intended something else. When on appeal there is a reversal the form of the order is within the power and discretion of the appellate court reviewing the case. It may be a procedendo as in Pollard's Petition, 127 Pa. 507, and in Johnson's License, 156 Pa. 322; or it may be a positive direction that the license be issued as in Donoghue's License, 5 Pa. Superior Ct. 18, and Distiller's License, 6 Pa. Superior Ct. 92; or in exceptional cases mandamus may lie to compel the granting, as in Prospect Brewing Company's Petition, 127 Pa. 523.

Order reversed and license directed to issue. Costs of appeal to this court to be paid by appellees and in the courts below to be paid as there ordered.

MESTREZAT, POTTER and STEWART, JJ., dissent.

MR. JUSTICE MESTREZAT, dissenting:

This was an application by the Indian Brewing Company to the court of quarter sessions of Indiana county for a brewer's license for the year 1909. The application was filed in November, 1908. Additional petitions were filed in support of the application and remonstrances were filed against it. The court of quarter sessions gave the parties a hearing at the time fixed by the rules of court in February, 1909, and after due consideration of the petitions and remonstrances and other matters required to be considered by the court, the learned judge of the quarter sessions refused the license. An appeal was taken from his decision to the Superior Court and by the unanimous judgment of that court the order of the quarter sessions refusing the license was affirmed. A petition of the brewing company was then presented to Mr. Justice ELKIN of this court at chambers in Indiana and he entered the following order: "And now, July 30, 1909, appeal with certiorari allowed as prayed for." The case was argued on October 12 in this court, and by a bare majority of its members the order of the quarter sessions refusing the license, as well as the decree of the Superior Court affirming the quarter sessions, are to be reversed, and a peremptory order made by this court directing the quarter sessions to issue the license. An opinion has been prepared by Mr. Justice ELKIN to be handed down expressing the views of the four members of this court who concur therein.

The application was for a brewer's license in the town of Indiana, Indiana county, under the Act of assembly approved June 9, 1891, P. L. 257, entitled, "An act to restrain and regulate the sale of vinous, spirituous, malt or brewed liquors, or any admixture thereof, by wholesale." The petition and supplemental petitions accompanying the application were signed by 3,090 persons, purporting to be residents of Indiana county, and averred "that said Indian Brewing Company is a fit corporation to which such license should be granted." Remonstrances were filed against the granting of the license and were signed by 5,191 persons, purporting to be residents

of Indiana county, and averred that "the applicant is not a fit person or corporation to be granted the license applied for." In addition to these remonstrances two reputable members of the Indiana county bar and members of the bar of this court, acting as attorneys for the remonstrants, filed specific charges of violations of the law against the applicant (1) for illegally selling malt or brewed liquors, and (2) for selling malt or brewed liquors contrary to the provisions of the Act of assembly of June 21, 1897, P. L. 176, which provides: "When any court shall have refused a license for any particular brewery the sale of said liquors at said brewery shall not be permitted under this act until the expiration of one year after the date of the application for the license which has been so refused." At the time provided by the rules of court, the learned judge of the quarter sessions gave the parties a full hearing, at which both parties were represented by counsel; and after due consideration the application for a license was refused.    The court filed the following opinion: "At the hearing of this application there were presented petitions favoring the application and remonstrances against the granting of the license, by reason of the unfitness of the applicant.    The petitions filed contained the names of about three thousand residents of the county and the remonstrances the names of about five thousand residents of the county entitled to the court's consideration.    Of the remonstrants about two thousand were men and three thousand, women.    From an examination of these petitions and remonstrances, having due regard to the number and character of the petitioners and remonstrants, we find that the weight of the evidence rests with the remonstrants and that the unfitness of the applicant is established by the weight of the evidence.    Whenever in the opinion of the court this fact should be found from the evidence, the statute under which the application is made requires that the license shall be refused."

It will be observed that the learned quarter sessions court heard and regularly disposed of the question on which the right of the applicant to have a license depended, viz., whether the applicant was a fit person or corporation to be granted a

brewer's license. It will further be observed, and should not be overlooked, that that was the sole and only question raised by the petitioners for and the remonstrants against the license, and required by the statute to be considered by the court in determining the right of the applicant to the license. The petitioners averred that the brewing company was a fit person or corporation to have the license and the remonstrants averred directly the contrary. Upon the issue thus made, both parties were permitted to file petitions and to introduce any other evidence which they desired. It must be conceded that the proceeding before the quarter sessions was entirely regular and conformable to the statute and rules of court governing the application, that the parties had a full hearing, and that the court received all the evidence offered for and against the application, and that the judge's order refusing a license was made after consideration of all the facts bearing upon the question at issue.

An appeal was taken to the Superior Court, as we have seen, and the order of the quarter sessions was affirmed by a unanimous court in an opinion filed by HENDERSON, J., in which he points out that the action of the quarter sessions court in refusing the license is clearly sustained by all the cases on the subject both in the Superior Court and the Supreme Court of this state. The first sentence of the opinion says: "None of the features of this case distinguish it in a material way from Black Diamond Distilling Co.'s License, 33 Pa. Superior Ct. 649; Reynoldsville Distilling Co.'s License, 34 Pa. Superior Ct. 269; and American Brewing Co.'s License, 161 Pa. 378."

Before considering the opinion on which the majority of this court reverses the two lower courts, we will notice the statutes regulating applications for brewers' licenses and some of the decisions construing those statutes. As has been noted, this application was made under the act of June 9, 1891. The sixth section of the act provides as follows: "The court of quarter sessions shall hear petitions from residents of the county, in addition to that of the applicant, in favor of and remonstrances against the application for such license, and in all cases shall refuse the same whenever in the opinion of the

said court having due regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public, or that the applicant or applicants is or are not fit persons to whom such license should be granted." The fourth section of the act provides that the provision "as to whether the place to be licensed is necessary shall not apply to a brewery or distillery." The only question, therefore, under the statute for the consideration of the court in granting or refusing an application for a brewer's license is whether the applicant is or is not a fit person to whom the license should be granted. The second section of the act provides, inter alia, that "the said court shall fix by rule or standing order a time at which application for said licenses shall be heard, at which time all persons applying or making objections to applications for licenses may be heard by evidence, petition, remonstrance or counsel."

Numerous decisions have been rendered by this court and the Superior Court, construing this act of assembly and the prior acts relating to the subject. They are all in accord, and there is no difficulty whatever in determining from them the proper construction of the act. In Gemas's License, 169 Pa. 43, in which the application was made under the act of 1891, this court, speaking by MITCHELL, J., said (p. 46): "the judgment of the court (of quarter sessions) as to the personal fitness of the applicant involves considerations of residence, citizenship, interest in other places where liquor is made or sold, conduct in regard to previous license, etc., applying equally to all kinds of licenses asked for." It may be well to suggest here that it is the duty of the quarter sessions in passing upon a license application to consider not only the voters but also all citizens, male or female, who sign the remonstrance. This is distinctly ruled by this court in Reed's App., 114 Pa. 452, an application for a wholesale liquor license. It is there said (p. 463): "The act does not require that either the petitioners or remonstrants should be voters; it is enough that they be citizens, whether male or female, hence, it is a mistake to pass over women, and count only voters."

The duty of the court of quarter sessions in granting or re-

fusing a license to deal in intoxicating liquors, the evidence to be considered by it, and the right of an appellate court to review its discretion are pointed out in many decisions of both appellate courts of the state.    In Reed's App., 114 Pa. 452, it is said (p. 463): "The petitions, pro and con, are not matters of record, but in the nature of evidence for the information of the conscience of the court, and, as a consequence, we cannot review them, or reverse the action of the judge of the quarter sessions on a certiorari.    Moreover, as no appeal has been given, we have no power to take cognizance of the complaint of the appellants."    In Raudenbusch's Petition, 120 Pa. 328, in speaking of what the quarter sessions should consider in passing upon an application for license this court said (p. 342): "In order to perform this duty properly, the act of assembly has provided means by which the conscience of the court may be informed as to the facts; it may hear petitions, remonstrances, or witnesses, and we have no doubt the court may in some instances act of its own knowledge.    The mere appearance of an applicant for license, when he comes to the bar of the court, may be sufficient to satisfy the judge that he is not a fit person to keep a public house.    The judge is not bound to grant a license to a man whom he knows to be a drunkard or a thief, or has actual knowledge that his house is not necessary for the public accommodation."    In Kelminski's License, 164 Pa. 231 we said (p. 233): "The law evidently contemplates action by the court in accordance with the knowledge it has of the character of the applicant and the needs of the locality in which he proposes to carry on business under the license, but this action is not necessarily founded upon the knowledge exclusively derived from the evidence and petitions produced on hearing.    It may, and sometimes very properly does, act of its own knowledge obtained from observation of the applicant and acquaintance with the district."    Thomas's License, 169 Pa. 111, was an application for a wholesale liquor license under the act of 1891.    The quarter sessions refused the license, and in affirming its action this court said: "The record shows that the case was heard, considered and decided by the learned court below, and that the license was refused on the ground

that in the opinion of the court it was not necessary. It is true it was the individual opinion of the judge upon which this action was taken, but we have so many times held that such opinion may be the basis of decision that we regard the subject as settled, and do not deem it necessary to review the cases or to change them," (citing cases).

The duty of the quarter sessions and its discretion in granting licenses under the act of 1891 is discussed at length by the late Mr. Justice DEAN in Gross's License, 161 Pa. 344. He says, inter alia (p. 347): "If the court has in a lawful manner performed the duty imposed upon it, it is not our business to inquire whether it has made a mistake in its conclusions of fact. Whether the same facts induce in our minds the same belief as in that of the court below, as to the character of the applicant or other material averments, is wholly immaterial; it is the discretion of the court of quarter sessions, not ours, that the law requires. . . . If the record shows the decree was had after hearing at a time fixed by rule or standing order, the presumption is, the decree is judicial and not arbitrary, and this presumption is not rebutted by an argument from evidence that the court ought to have reached a different conclusion." There is the same discretion in the court of quarter sessions in granting or refusing a wholesale license as in the case of a retail license; Nordstrom's Petition, 127 Pa. 542, 553. The judge is not bound to set out legal reasons for his action in refusing a license; he is only bound to have them: Gross's License, 161 Pa. 344.

In the light of the above decisions of this court and the conceded facts of the case let us examine the opinion of the majority of the court in the present case. Justice ELKIN says: "There is thus presented (to this court) for determination the narrow question, Does the weight of the evidence gathered from the petitions and remonstrances furnish a legal reason for refusing the license? The only averment contained in the remonstrance is that the applicant is not a 'fit corporation' to be licensed and upon this naked averment, more numerously signed by persons who objected to the granting of the license than by those who favored it, the learned judge found that the

unfitness of the applicant had been established by the weight of the evidence." It will thus be observed that the majority of the court holds that it is the duty of this court to weigh the evidence and determine whether the license should have been granted; that it is for this court to determine whether the applicant is a "fit corporation" to be licensed. This is in the teeth of all the authorities and is the fundamental error which leads the majority to its incorrect conclusion. This, as pointed out in the authorities cited, is a certiorari, on which this court can determine only whether the court below in passing upon the application conformed its action to the statutes regulating the subject. This court has nothing to do with the evidence in the case or in determining whether its weight is in favor of or against the application. It has no authority to examine and consider the petitions or remonstrances or any evidence which was produced at the hearing for the purpose of determining the facts. Those matters were for the quarter sessions and for that court only, and when this court attempts, as it does, to consider and determine the weight of the evidence for and against the license it is confronted by an unbroken line of our own decisions condemning its action. The reason assigned by the quarter sessions for refusing the license is a valid one under the act of assembly, and hence an appellate court cannot inquire into the reason or determine whether the evidence sustains the quarter sessions in its conclusions. No further discussion of this paragraph of the majority opinion is necessary, as the authorities cited above clearly covers the question and convicts the majority of palpable error.

The majority opinion concedes that the wholesale liquor license act of 1891 applies to corporations, and suggests that the "question raised by this record is in what manner ought these words (fit persons) be made applicable to a corporation seeking a license. . . . A corporation has no personal attributes and must be judged by its corporate acts. In the present case the only averment in the remonstrances upon which the court based its finding is that the applicant is not a 'fit corporation' to be licensed. This is clearly not sufficient." The finding of the quarter sessions is: "That the unfitness of

the applicant is established by the weight of the evidence."
The additional petitions in favor of the license aver that the
Indian Brewing Company, "is a fit corporation to which such
license should be granted," and the remonstrances allege that
the applicant "is not a fit person or corporation to be granted
the license applied for." This is the issue made by the plead-
ings and the one which the act of 1891 requires the quarter
sessions to pass on in determining the applicant's right to a
license. How was this issue to be determined? As we have
seen, the statute points out specifically that the court shall
hear petitions, remonstrances, and any evidence which the par-
ties may desire to introduce for and against the application.
Such evidence was presented to and considered by the quarter
sessions, and upon it the learned judge based his refusal of a
license. It was the acts of the applicant corporation, as dis-
closed by the evidence, which compelled the quarter sessions
to refuse the license.

The parties objecting to the license were required to aver
in the remonstrance simply the unfitness of the applicant, and
such is the uniform practice throughout the commonwealth.
The sixth section of the Act of June 9, 1891, P. L. 257, pro-
vides that the quarter sessions shall not grant the license if the
applicant is not a fit person. It is wholly immaterial why he
is not a fit person, and if the remonstrants on the hearing con-
vince the court that for any reason he is unfit, then the act
prohibits the granting of the license. For aught we know, the
quarter sessions found that this corporation had violated many
of the laws of the commonwealth regulating the sale of in-
toxicating liquors. Specific charges were filed to that effect
by reputable members of the bar of Indiana county in behalf
of the remonstrants, and we must assume that these or other
illegal acts, making the applicant unfit, were established to the
satisfaction of the court. As pointed out above, our decisions
all hold that the judge has the right to act on facts affecting
the fitness of the applicant which are within his own knowl-
edge. He therefore had before him in considering this applica-
tion the fact that he had refused this same applicant a license
during the previous year, because it was shown to his satis-

faction by evidence that the Indian Brewing Company was guilty of seven specific charges of violating the liquor laws of the commonwealth. The refusal of the license was based upon the evidence, as appears by the opinion of the learned judge, wherein he says: "We find that the weight of the evidence rests with the remonstrants and that the unfitness of the applicant is established by the weight of the evidence. Whenever in the opinion of the court this fact should be found from the evidence, the statute under which the application is made requires that the license shall be refused." It is apparent, therefore, that the averment of unfitness by the remonstrants was supplemented by evidence which convinced the court of the unfitness of the corporation to receive a brewer's license, and required the quarter sessions, under the statute, to deny the application.

The order to be entered by the majority of the court is clearly erroneous. It is as follows: "Order reversed and license directed to issue." This court assumes the functions, and proposes to exercise the powers, of the court of quarter sessions in disposing of the application for the license. It undertakes to pass upon the fitness of the corporation when, as we have seen, it does not and cannot legally have before it any evidence on the subject. The case is being considered here upon a writ of certiorari, which brings up simply the record, and the evidence, including the petitions and remonstrances, are no part of the record for the purpose of determining the fitness of the applicant. Notwithstanding these facts, the majority of the court enters a mandatory order on the quarter sessions to issue the license, instead of awarding a procedendo requiring that court to again hear and determine the applicant's right to the license. This, I submit, is manifest error and is without a single precedent in the courts of this state to support it. On the other hand, it is condemned by all our authorities.

Johnson's License, 156 Pa. 322, was an application for a distiller's license under the act of 1891. The license was refused by the quarter sessions without filing an opinion, and the applicant appealed to this court. The appeal was sustained,

as in the present case, but this court did not issue a peremptory order to the quarter sessions to grant the license. On the contrary, the decree of this court was as follows: "The order of the court below refusing a license is reversed, and a procedendo awarded." The applicant thereupon moved the quarter sessions to grant the license. The judge of the quarter sessions filed a lengthy opinion in which he set forth his reasons for refusing to grant the license, and again declined to grant the application. The applicant then presented his petition to this court for a mandamus to compel the court of quarter sessions to grant the license. This court refused the petition and declined to interfere with the discretion of the quarter sessions in refusing the application: Johnson's License, 165 Pa. 315.

The same mode of procedure was observed in Gemas's License, 169 Pa. 43, which was also an application for a distiller's license under the act of June 9, 1891. The quarter sessions, without filing an opinion, refused the application and the applicant appealed to this court. The order of the quarter sessions was reversed, this court holding that the reason assigned in the order by the quarter sessions was not a valid one. This court, however, did not direct the court below to issue the license, but entered the decree: "Judgment reversed and procedendo awarded." By this order the application was again remanded to the quarter sessions, which had the authority to again consider and determine the right of the applicant to his license. In concluding the opinion Mr. Justice MITCHELL says (p. 46): "We are of opinion therefore that the only reason assigned for a refusal of the license was not a valid reason under the statute in the case of a distiller, and unless there is other ground for refusing it, which does not appear, the license should be granted." Whether there was "other ground" for refusing it was a matter submitted by this court for the consideration and decision of the quarter sessions.

I regard the ruling of the majority of the court as an entire departure from all the adjudicated decisions of both appellate courts of this commonwealth. It practically annuls the act of assembly, and denies the right to grant licenses by the court of quarter sessions, the only tribunal invested by the laws of the

commonwealth with that power. It assumes the authority to review on a certiorari the merits of a procedure in a court of first instance which has never heretofore been attempted in this commonwealth.

I object to granting this license because the members of this court have no authority to usurp the functions of the quarter sessions and determine the fitness of the applicant from their own knowledge of the facts or from facts otherwise obtained; because the quarter sessions of Indiana county was compelled to refuse a similar application by this corporation the previous year on the ground that it was guilty of seven distinct offenses against the liquor laws of the commonwealth; and because 5,000 reputable citizens of Indiana county where the applicant proposes to manufacture and sell its liquors, declare the Indian Brewing Company unfit to have a license, and the correctness of their judgment is confirmed by the court of quarter sessions of the county, the only legal tribunal under the laws of the state having authority to determine the question.

I would affirm the order of the court of quarter sessions refusing the license and also the judgment of the Superior Court affirming that order.

MR. JUSTICE POTTER and MR. JUSTICE STEWART, dissenting:

If it certainly appeared in the opinion of the learned judge that in determining the unfitness of the applicant, he was governed only by the numbers on one side and the other of the petitioners and remonstrants, we would agree that this was a wholly erroneous way of reaching a decision and a reversal would be called for. But we think the opinion warrants a fair inference that he had regard as well to other evidence. What that evidence was, is not set out in the opinion, nor was it necessary that it should be, but that he had other evidence before him we think is clearly implied in what he says.

We would affirm the judgment of the Superior Court, and the order of the court of quarter sessions.