# PETITION OF M. E. POLLARD FOR LICENSE.

## CERTIORARI TO THE COURT OF QUARTER SESSIONS OF ALLEGHENY COUNTY.*

### Argued May 23, 1889—Decided June 28, 1889.

[To be reported.]

1. The granting of wholesale licenses being a matter specially committed to the Courts of Quarter Sessions by the act of May 24, 1887, P. L. 194, upon a writ of certiorari the Supreme Court may review the proceedings of such courts therein, so far as to see that they have kept within the limits of the powers conferred, and have exercised them in conformity with law.

2. The provision of the act of May 24, 1887, P. L. 194, that wholesale licenses to dealers, brewers, distillers, bottlers, etc., "shall be granted only by the Court of Quarter Sessions of the proper county, in such manner as is provided by existing laws," does not confer upon such courts the discretionary powers conferred by the act of May 13, 1887, P. L. 108, relating to licenses to sell liquors by retail.

3. The retail license act of May 13, 1887, being an act to restrain and regulate the sale of liquors, and the wholesale license act of May 24, 1887, being an act providing for revenue, with no reference in the latter act to the provisions of the former, the "existing laws" referred to in the latter act are the existing laws in force in the proper county relating to the granting of wholesale licenses.

4. The existing law relating to the granting of wholesale licenses in Allegheny county is the act of April 3, 1872, P. L. 843, which, in respect of the qualifications of applicants, is unrepealed by the act of May 24, 1887, P. L. 194, and imposes upon applicants no qualifications save that they must be citizens of the United States, of temperate habits, and of good moral character.

5. Wherefore, a petitioner for a wholesale license as a dealer, brewer, distiller, or bottler, etc., in said county, who has presented his application in due form and has complied with the requisites of the law, has prima facie a right to such license, and, in the absence of anything upon the record to impeach such right, the refusal of the court to grant it will be reversed.

6. If, however, a remonstrance is filed setting forth that the petitioner is disqualified, because not a citizen of the United States, or not of temperate habits, or not of good moral character, it is the duty of the court to hear the case, and, if the remonstrance is sustained by evidence, to refuse the license; and the refusal, on such grounds alone, is the exercise of a discretionary power which is not reviewable.

* This case, though belonging to the Western District, is reported here because of its relation to the license cases following.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 121 October Term 1889, Sup. Ct. (W. D.); court be-
low, No. 1230 March Term 1889, Q. S.

On February 5, 1889, M. E. Pollard, widow of Thomas Pol-
lard, deceased, filed her petition praying the court to grant her
a license to sell liquors at wholesale, under the act of May 24,
1887, P. L. 194.  The petition was in due form, under the
rules in such cases, and set forth that the petitioner was a cit-
izen of the United States; that she resided at the corner of
Stanton and Euclid avenues, in the 19th ward, Pittsburgh, and
had resided therein for four years; and that the place for
which a license was desired was at No. 1044 Penn avenue, oc-
cupied the last year as a wholesale liquor store by the husband
of the petitioner.  A bond, in due form also, was filed with the
petition.

The rules in force relating to the granting of wholesale li-
censes, adopted January 21, 1888, were the following:

## "RULE 6.

"Wholesale dealers, brewers, distillers, rectifiers, compound-
ers, storekeepers, agents and bottlers applying for license to
transact business under the provisions of the act of assembly,
approved May 24, 1887, shall in their petition conform to the
requirements of the first, second, third, fourth and tenth para-
graphs of section 5 of the act of assembly, approved 13th May,
1887, P. L. 109, 110.  The petition shall also give the names
of no less than two reputable resident freeholders of the county,
who will be sureties on the bond of the applicant, and a state-
ment that each of said two sureties is a bona fide owner of real
estate in the county worth over and above all incumbrances
the sum of two thousand dollars, and that it would sell for
that much at public sale.

## "RULE 7.

"The Rules of Court in relation to retail dealers shall apply
to applications under the act of 24th May, 1887, as to time of
filing petitions, advertisement thereof, and the date from which
licenses shall run, and also as to petitions in favor of and re-

monstrances against the granting of a license; such applications will be heard on the first Monday of April in each year, and the hearing shall be continued for such length of time as may be necessary to dispose of all the applications."

An act of assembly entitled " An act to regulate the sale of intoxicating liquors in the county of Allegheny," approved April 3, 1872, P. L. 843, provided:

" SECTION 1. That all laws and parts of laws now in force, relative to the sale of vinous, spirituous, malt or brewed liquors, or any admixtures thereof, in the county of Allegheny, or any part thereof, be and the same are hereby repealed; and from and after the passage of this act it shall be unlawful to keep or maintain in said county any house, room or place where vinous, spirituous, malt or brewed liquors, or any admixtures thereof, are sold or drank, except as hereinafter provided: Provided, That this act shall not be construed to repeal or affect any special law prohibiting the sale of intoxicating liquors, or prohibiting the granting of licenses, in any borough or township in Allegheny county.

" SECTION 2. The treasurer of said county shall, annually, upon payment to him of the license fees, and the receiving of the bond hereinafter mentioned, grant the license hereinafter specified to citizens of the United States, of temperate habits and good moral character, for the term of one year, to be computed from either the first days of May, August, November or February following the date of the granting thereof: Provided, That in no instance shall a license be dated back of the time of its being issued, nor shall any liquors be allowed to be sold under said license, until the year for which the license issues shall have commenced."

The provisions of the act of May 24, 1887, P. L. 194, entitled " An act providing for the licensing of wholesale dealers in intoxicating liquors," are quoted in the opinion of the Supreme Court.

On April 13, 1889, the petitioner and one of her salesmen were examined before the court, and testified to the amount of business done in the preceding year in the sale of whiskey and beer; that whiskey and beer were sold in barrels, casks, jugs, and in bottles put up in cases, and that sales were made to clubs and to dealers, in the city and other places. No objec-

tion or remonstrance against the granting of the license prayed for was filed.

On April 22, 1889, the petition was refused, the court, WHITE, J., filing no opinion showing reasons therefor. On the same day, however, like petitions in due form accompanied by bonds also in due form, filed by a large number of other applicants including the L. H. Harris Drug Co., Joseph Fleming & Son, druggists, T. D. Casey & Co. and Joseph Einstein & Co., bottlers, without objection or remonstrance filed, were also refused, and the court, WHITE, J., filed a general opinion relating to both retail and wholesale licenses, which in part was as follows:

Unexpectedly and much against my will I was thrown into the license court this year and had to hold it alone. I felt the great responsibility, and knew how the court might be criticised and misrepresented. But a judge who shrinks from any duty, or is deterred from a faithful performance of it, from fear of personal consequences, is unworthy his office.

At the beginning of the court and during its sittings, the Department of Public Safety of the city of Pittsburgh presented certain papers in open court complaining of numerous violations of the law by brewers, wholesale and retail dealers, and calling upon the court to aid the department in suppressing these evils, and securing good municipal government. These papers, and the duty of the court under the law, required a searching and thorough examination of the applicants. Nor could they complain of this. The law requires certain qualifications in the applicants, and if they have had license, that they shall have observed all the laws on the subject. By their applications they assert in court that they possess these qualifications and have faithfully kept these laws. It is the right and duty of the court to give them a thorough cross-examination.

The law requires that all applicants for retail license shall be citizens and men of " temperate habits and good moral character;" also that the court " shall refuse the license when it is not necessary for the accommodation of the public and the entertainment of strangers and travelers." This is the imperative mandate of the statute. The evils of intemperance and excessive drinking had become so great and widespread, that the pub-

Opinion of Court below.

lic welfare required more stringent regulations on the subject. The acts of 1887 were passed to check these evils. The act in reference to distillers, brewers, wholesale dealers and bottlers, was before the legislature at the same time as the retail act, and should be construed in connection with it, both as parts of the new system; for in all these cases the court is required to hear remonstrances and objections and exercise a sound discretion. If these acts are too stringent the remedy is with the legislature. The courts should administer them in their true intent and spirit. The court has no right to construe these acts in accordance with any personal views on the subject, or stretch them to meet any supposed public demand.

As many applicants were refused, and some who had license last year, it is proper to state the grounds of the court's action; not the reasons in each particular case, but classifying them under several general heads. Some were refused on one ground and some on several.

### RETAIL DEALERS.

\*       \*       \*       \*       \*       \*       \*       \*

### DISTILLERS AND BREWERS.

The Department of Public Safety complained that distillers, brewers and wholesale dealers were habitually supplying liquors to unlicensed houses, and that while this continued it was impossible to suppress the illegal traffic. Some of the distillers, and most of the brewers and wholesale dealers, when closely pressed, had to admit that they had done so. Generally they were willing to confess the wrong and promise not to be guilty in the future. These were granted license on that condition. But some claimed the right to sell to any persons who would pay, without inquiring or caring whether or not they were engaged in the illegal traffic. Of course, such were refused. One who sells to another to carry on an illegal business becomes a party to the unlawful act, and is just as guilty as the direct violator of the law.

Another serious complaint against distillers, brewers and wholesale dealers was, that they were selling enormous quantities in jugs, small kegs and bottles, and delivering them late at night, and at improper and suspicious places. The jug trade is a new business. It started up after the license court of last

year. It has been one of the greatest sources of drunkenness and trouble. Parties would get jugs or small kegs at the brewery, and taking them to a shanty, back yard or vacant lot, have a drunken frolic all night, and frequently this occurred with boys. That this kind of business shall cease, is also made a condition in the licenses now granted. If it continues, or the practice of selling to unlicensed houses, the license will be revoked.

### WHOLESALE DRUGGISTS.

Retail druggists are not entitled to a license to sell liquors by wholesale. It is a totally distinct business. Nor are wholesale druggists, where the intention is to enter largely into the liquor business. But it may be a convenience to wholesale druggists to have a wholesale liquor license, when filling orders from retail drug stores in the country, or to furnish a quart or gallon of liquor occasionally for proper purposes in the city. But it should be merely incidental to their other business, and the amount sold be a small fraction of their total sales. When the liquor traffic, especially in bottles and jugs, becomes a main feature of their business, they should be refused license. On this principle the court has acted.

### WHOLESALE DEALERS.

The retail dealers may sell not more than one quart, the wholesale dealers not less than one quart. This is the dividing line between the two classes of business. But the law means that the two shall be entirely different kinds of business. The main business of the retailer is drinks; the main business of the wholesaler, in large quantities, in bulk. When the retailer deals out extensively in bottles, pints or quarts, he is.perverting his legitimate business; when the wholesaler deals out extensively in single bottles, he is perverting his legitimate business.

The most fruitful source of drunkenness and the greatest evil to boys and young men under age is the bottle trade. The examination of the applicants showed that many of the parties having a wholesale license did little more than a retail business in bottles. That the jug trade constituted a main feature of their business. Such a house is a greater evil than a retail house. It sells almost exclusively in the neighborhood. One

Opinion of Court below.

man or boy buys a bottle or jug and half a dozen or a dozen get drunk on it. In harmony with the spirit of our present laws on the subject, the court has felt constrained to refuse many of these wholesale applicants who had license last year.

Another fact was developed during the examinations; that in the past year many drinking clubs were started in different parts of the cities and larger boroughs. These are most disgraceful and demoralizing associations. The members themselves seem to have thought so, for they were generally disguised under the name of a " Literary " or " Musical " society. This, however, is only a temporary evil, perhaps engendered by spiteful hostility to the stringent act of 1887. The clubs will soon die out. The bad effects are already seen and felt. The members will soon get ashamed of them and abandon them. The existence of such clubs is no argument in favor of more licensed houses, for the members could all get enough drinks without them. It is rather an argument in favor of more stringent regulations, and for drawing a tighter rein on those wholesale dealers who furnish them the liquors.

The bucket trade is a disgraceful business and also a great evil. It is not unlawful to sell a quart of beer or whiskey in a bucket. But when men, women and children are seen with buckets entering or coming from a saloon or liquor store, and carrying them along the streets to their homes, the sight is offensive and revolting to most persons, and is regarded as a sure sign that the persons are of a low class and the saloon or store one of the lowest and worst. There is an indecency about it that should not be tolerated. Some one has said the poor man ought to have the privilege of carrying his liquor in his bucket, for he cannot, like the rich man, have it sent in a demijohn by the express wagon to his house. But every man should have a decent respect to public opinion. Stopping the indecent bucket trade will not prevent any poor man from getting what liquor he wants.

### BOTTLERS.

Bottling is a distinct business under the law. A wholesale dealer has no right, under a wholesale license, to convert his house into a bottling establishment. Some who had a wholesale license last year, did so, and are refused this year. Small

bottling houses are generally an evil in the locality. It is difficult to conduct the business in a legitimate manner. Selling single bottles at the house, or peddling them about the streets, and selling to anybody who calls, is apt to run into an illegitimate business, selling to improper persons.

\* \* \* \* \* \* \* \*

On April 26, 1889, Mrs. Pollard filed a petition for a rehearing upon her petition for license, and on May 9th, the petition for rehearing was refused. Thereupon the petitioner took this writ, specifying for error:

1. The court erred in refusing the application of Mary E. Pollard for a wholesale license.

2. The record showing that no objections were made or remonstrances filed to her application, the court erred in refusing the same.

3. So far as the record shows, Mary E. Pollard was entitled to a license to sell liquors at wholesale, and, therefore, the judgment of the court refusing her license is erroneous.

4. Mrs. Pollard being a citizen of the United States, and there being no intimation that she was either intemperate or of immoral character, the court below had no discretion, but were legally bound to grant her license on the record as it stood.

Writs of certiorari were also taken by the L. H. Harris Drug Co., Joseph Fleming & Son, T. D. Casey & Co., Joseph Einstein & Co. and a number of others, upon like cases with that of M. E. Pollard, the assignments of error raising the same question, and all the cases were argued together.

*Mr. James R. Sterrett, Mr. John M. Kennedy, Mr. James C. Doty, Mr. Henry R. Ewing, Mr. Charles F. McKenna* and *Mr. D. T. Watson*, for Mary E. Pollard, the L. H. Harris Drug Co. and Joseph Fleming & Son, plaintiffs in error.

*Mr. J. S. Ferguson, Mr. Josiah Cohen* and *Mr. A. V. D. Watterson*, for T. D. Casey & Co., plaintiffs in error.

*Mr. John S. Robb* and *Mr. James Fitzsimmons*, for Joseph Einstein & Co., and others, plaintiffs in error:

We have no controversy upon the rules laid down in Raudenbusch's Petition, 120 Pa. 329. Our cases do not involve a

discretionary act of the court, but they each and all involve a question of power which is always reviewable on certiorari. The act of May 24, 1887, vested in the Court of Quarter Sessions a power not judicial in its nature, the granting or refusal of wholesale licenses. The only power of the court is from the act itself, and the jurisdiction conferred is special and limited. The maxim, omnia præsumuntur rite esse acta, does not apply as it does to questions arising under the common law. The statutory reasons for an order reviewed must appear on the record; and this court is authorized by writ of certiorari to review the proceedings of the Court of Quarter Sessions in any matter specially committed to it by statute, so far as to inquire and determine the extent and limits of its power, and the regularity of its exercise: Commissioners' App., 57 Pa. 453; People v. Gas Light Co., 39 N. Y. 181; Kimber v. Schuylkill Co., 20 Pa. 368; Jones v. Tatham, 20 Pa. 410; Bacon's Abr., Courts, D., 4 B.; Latham v. Edgerton, 9 Cow. 228-9; Smith v. Rice, 11 Mass. 513, 514; Bryson's Road, 2 P. & W. 210.

1. The court below was of opinion that when the wholesale act of May 24, 1887, P. L. 194, provided that "licenses shall be granted only by the Court of Quarter Sessions of the proper county, in such manner as is provided by existing laws," it referred to and carried into it some of the provisions of the retail act of May 13, 1887, P. L. 108, and therefore, among its rules to govern the license court, established Rule 6, and held that no one was of right entitled to a wholesale license; that the discretion to grant or refuse was wholly with the court: that the necessity of wholesale stores should be taken into account and no more licenses should be granted than the court thought were necessary to transact the wholesale business; that wholesale dealers should not sell in bottles or jugs, though the quantity sold was one quart or more; and that druggists' sales should be but a small fraction of their total business, but what the percentage should be the court did not fix. It seems clear that the wholesale act does not authorize any of these rulings, and in so holding the court acted beyond the scope of its power.

2. The act of May 24, 1887, does not vest in the Court of Quarter Sessions a discretionary power to grant or refuse a

wholesale license as under all the circumstances it may deem proper. On the contrary, the act plainly states that licenses "shall" be granted, and the jurisdiction in the Court of Quarter Sessions to refuse a license, arises only when objections and remonstrances are filed, setting forth some fact which, under the act, would be ground of refusal. A comparison of the language of the retail act of May 13, 1887, with that of the wholesale act of May 24, 1887, plainly shows that while the former act was intended to regulate and restrain the sale of liquor by retail, and to vest a large discretion in the court, the latter act, on the contrary, was merely a revenue act and gave no power to the court, unless objections and remonstrances were filed. If a man or woman is a citizen of the United States, and is neither intemperate nor immoral, he or she may have a license to sell liquors at wholesale. This the wholesale act of 1887 says, and it is similar in this respect to § 7, act of March 31, 1856, P. L. 200, as modified by § 6, act of April 20, 1858, P. L. 365, which was held to be mandatory in its provisions: Schlaudecker v. Marshall, 72 Pa. 200.

3. No portion of the retail act of May 13, 1887, is carried into the wholesale act of May 24, 1887. The words of the latter act, providing that licenses shall be granted only by the Court of Quarter Sessions "in such manner as is provided by existing laws," refers either, (a) to the special act of April 3, 1872, P. L. 843, relating to Allegheny county, or (b) to the general act of March 31, 1856, as amended by the act of April 20, 1858. In either case, it is the duty of the court to grant licenses to all who comply with the act. Neither the retail act of 1887, nor the wholesale act of 1887, repealed the prior acts relating to wholesale licenses, and especially the local act of April 3, 1872, so far as relating to the qualifications of petitioners. One statute is not to be construed to repeal a prior one which is not irreconcilable with it: Brown v. Commissioners, 21 Pa. 43; Barber's Election, 86 Pa. 392; Sifred v. Commonwealth, 104 Pa. 181. Under the act of 1872, licenses in Allegheny county were granted by the county treasurer. Under this as the "existing law," the "manner" was simple,— the license fee was paid and the license was issued.

4. When, therefore, the wholesale act of 1887 provided that the licenses should be granted "in such manner as is provided

by existing laws," it referred of course to wholesale licenses; and then comes the provision requiring a time to be fixed at which applicants for and all persons making objections against, " may be heard by evidence, petition, remonstrance or counsel." If this provision be difficult of construction, one thing is plain; that if a discretion is given to the court to refuse a petition for a wholesale license, it is only when objections to the grant thereof are properly made. It is not the court, or the judge thereof, who grants the license; it is the state. The words of the act of May 24, 1887, we earnestly urge, show that the legislature intended that licenses should be granted in all cases where the record shows that the application was regular, and that neither objections nor remonstrances were filed thereto.

## POLLARD'S PETITION.

OPINION, MR. CHIEF JUSTICE PAXSON:

The plaintiff in error presented her petition to the Court of Quarter Sessions of Allegheny county, praying for a license to sell liquors at wholesale at No 1044 Penn avenue, in said city. The petition was in proper form, and it was not denied that she had complied with all the requirements of the law. Upon the hearing of her petition, there was no remonstrance or objection to the granting of her license, or to the form of her petition or bond. The court below refused her application, and also declined to grant a rehearing. The record, which has been brought up by the writ of certiorari, fails to disclose any remonstrance filed or objection made to her application. Under such circumstances is the case reviewable here?

We decided in Raudenbusch's Petition, 120 Pa. 328, that the granting of a license to sell liquor at retail, under the act of May 13, 1887, P. L. 108, was within the discretion of the Quarter Sessions, and not reviewable upon certiorari. The court below applied the doctrine of that case to applications for licenses, made under the act of May 24, 1887, P. L. 194, " providing for the licensing of wholesale dealers in intoxicating liquors." The narrow question presented for our consideration is, whether under the act relating to wholesale licenses, the court has the same discretion to grant or refuse a license as it has under the prior act relating to retail licenses.

It requires but a glance at the two acts to see that their ob-

ject is essentially different. The retail act of May 13th was intended to restrain the sale of liquors. This clearly appears in its title, which reads: " An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof." This was the construction placed upon that act in Raudenbusch's Petition, supra. The act of May 24, providing for wholesale licenses was a revenue act. There is not a word in it to indicate any intention of restraining the sale of liquor. The second and third sections of said act are as follows:

" Section 2. Licenses shall be granted only by the Court of Quarter Sessions of the proper county, in such manner as is provided by existing laws, and shall be for one year from a date fixed by rule or standing order of said court: the said court shall fix by rule or standing order a time at which applications for said licenses shall be heard, at which time all persons applying or making objections to applications for licenses may be heard by evidence, petition, remonstrance, or counsel: Provided, That for the present year licenses may be granted under previous laws at any session fixed by said court, not later than June 30th. Provided, further, That it shall not be lawful for any rectifier, compounder, wholesale dealer, storekeeper, agent or bottler to sell in less quantities than one quart, and distillers, brewers, and manufacturers shall not sell in less quantities than one gallon.

" Section 3. That all bottlers within the commonwealth shall be required to procure license from the Court of Quarter Sessions of the respective counties in which they are located, in the manner provided for in the second section of this act, for which they shall pay the sum of two hundred dollars in cities of the first, second, and third classes, one hundred dollars in all other cities, boroughs and townships: Provided, That no bottler shall be permitted to sell spirituous, vinous, malt, or brewed liquors to be drank upon the premises where sold, nor at any place provided by such seller for such purpose."

There are two things to be noticed in the second section above quoted. They are (*a*) that licenses shall be granted by the Court of Quarter Sessions, in such manner as is provided by existing laws, and (*b*) that applications for licenses may be

heard by evidence, petition, remonstrance, or counsel. From the latter proposition it may be argued with some force that the court has a discretion in the matter of wholesale licenses. For of what use would it be to hear an application by "evidence, petition, remonstrance, or counsel," unless the court has the power to decide, that is, to grant or refuse such application. All this is conceded. The court has a discretion in such cases; it will be our purpose to define the character of that discretion and its extent.

As preliminary to the discussion of this point, it is proper to refer to that portion of the second section (a), which provides that licenses shall be granted by the court, "in such manner as is provided by existing laws." What existing laws are here referred to? Clearly, the existing laws in regard to wholesale licenses. I know that the opinion has prevailed in some quarters that the effect of these words is to read into the wholesale act several sections of the previous retail act. This construction is so palpably erroneous that it would be a waste of time to discuss it. There is no reference in the one act to the other. The act in force in the county of Allegheny in May, 1887, in regard to wholesale licenses, was the special or local law of April 3, 1872, P. L. 843, applicable to Allegheny county only, which provides, inter alia, that "The treasurer of said county shall, annually, upon payment to him of the license fees, and the receiving of the bond hereinafter mentioned, grant the licenses hereinafter specified, to citizens of the United States of temperate habits and good moral character," etc. The act of May 24, 1887, contains no repealing clause. The act of 1872 is not repealed in express terms or by necessary implication, so far as regards wholesale licenses, excepting to the extent that the one act is supplied by the other. Thus, the act of 1887 declares that wholesale licenses shall be granted by the Court of Quarter Sessions, instead of by the county treasurer; it provides for a hearing by the court of applications for such licenses; makes a different classification of venders and fixes a different rate to be paid. But it imposes no qualifications upon applicants for wholesale licenses; it does not even require that they shall be citizens of the United States, or that they shall be persons of temperate habits, or of good moral character. Where are we to look for these qualifications? Certainly

not in the retail act, which has nothing whatever to do with it, but in the existing laws in regard to wholesale licenses, to wit, the act of 1872. There is nothing in the act of 1872, which as before observed is a local act, applicable only to the county of Allegheny, to indicate that any qualification was requisite for a wholesale dealer than those above mentioned; or, that any discretion existed in the Court of Quarter Sessions to refuse such license, except for cause, and such cause must relate to one of three things, viz.: citizenship, character, or sobriety. It follows that a citizen of the United States, of temperate habits and good character, who presents his application for a wholesale license in due form, and who has complied with the requisites of the law, has prima facie a right to such license. In the absence of anything upon the record to impeach such right, it is the duty of the court to grant it. If a remonstrance is filed setting forth that the applicant is disqualified for either of the three causes above stated, it is the duty of the court to hear the case, and if the remonstrance is sustained by evidence, to refuse a license. Such case is not reviewable here, for the reason that it would be a proper exercise of the discretion conferred upon the court by the act of May 24, 1887. But the discretion goes no further. It does not extend to an arbitrary refusal of a license. I use the word arbitrary in no offensive sense, but to indicate the refusal of a wholesale license for reasons other than those above indicated. The learned judge below has performed a thankless and most unpleasant duty, and we are satisfied he has done so without fear or favoritism. But we are compelled to differ from him in our construction of the act of assembly referred to.

An extended argument is not needed to show that the discretion conferred upon the court by the retail act of 1887, does not extend to the wholesale act. A few words upon this subject, however, may be appropriately added. As before observed, the object and leading thought in the former act was to restrain and regulate the sale of liquor; that is to say, to restrain its sale to the consumer. It was for such reason that a large discretion was conferred upon the Quarter Sessions. If we contrast the second section, above quoted, of the wholesale act, with the seventh section of the retail act, the difference between them is palpable. The said seventh section is as follows:

Opinion of the Court.

" The said Court of Quarter Sessions shall hear petitions from residents of the ward, borough or township, in addition to that of the applicant, in favor of [and] remonstrances against the application for such license,'and in all cases shall refuse the same whenever in the opinion of the said court, having due regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public and entertainment of strangers or travelers, or that the applicant or applicants is or are not fit persons to whom such license should be granted, and, upon sufficient cause being shown or proof being made to the said court that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the Court of Quarter Sessions shall, upon notice being given to the person so licensed, revoke the said license."

We cannot incorporate or read into the wholesale act the above section of the retail act, for the reason that we are not clothed with legislative powers. Moreover, it is inapplicable to wholesale licenses. What has the court to do with the question whether a particular wholesale license is " necessary for the accommodation of the public and entertainment of strangers or travelers?" In the case of a retail license the court may well inquire, indeed it is its duty to do so, whether the public accommodation in the particular ward, street or block, requires that the applicant shall be licensed. The whole theory upon which retailers are licensed, and it is the theory of the law, is that they are needed for the public accommodation, to provide places where strangers and travelers may rest, and procure needed refreshments. Hence it may very well be, as was said in Raudenbusch's Petition, supra, that " if a ward has one hundred public houses, where only fifty are required by the public wants, it is plain that fifty houses must be denied license, although every one of the applicants is a worthy man and keeps a respectable house, and although there be neither remonstrance nor objection on the score of want of fitness." None of this reasoning applies to a wholesale license. It is not granted for the convenience of a particular neighborhood, nor for the accommodation of strangers or travelers. Nor does it matter where the place of business is located. If all the wholesale liquor houses in Pittsburgh were in a single

block, it would make no difference, and would be no objection to their being licensed. Their business is not confined to any particular locality; on the contrary, it is general, and we may fairly infer from the knowledge of trade which every intelligent man possesses, that but a small portion of the sales of a wholesale house is confined to the city or place in which it is located. How then would it be possible for a judge to intelligently exercise a discretion as to the need of a wholesale house in a particular location? The power to close up large establishments, such as breweries, distilleries, and wholesale liquor houses, when perhaps hundreds of thousands of dollars are invested therein, is too vast to be exercised by any man or any court, excepting upon the clearest grant of legislative authority. It cannot be done upon mere implication.

We are in no doubt as to our power to revise the proceedings below upon this writ. This court possesses and exercises the powers of the King's Bench, and it was said of them by the late Justice SHARSWOOD, in Commissioners' App., 57 Pa. 452: "It is beyond all question that under these extensive powers, this court is authorized to examine and review the proceedings of the Court of Quarter Sessions in any matter specially committed to it by statute, so far as to inquire and determine the extent and limits of its power and the regularity of its exercise. It is equally clear that the proper mode of asserting this jurisdiction is by bringing the record of its proceedings before us for inspection by writ of certiorari." And it was held by the Court of Errors and Appeals of New York, in the People v. Citizens' Gas Light Co., 39 N. Y. 81, in speaking of the writ of certiorari, that "its office extends unquestionably to the review of all questions of jurisdiction, power, and authority of the inferior tribunals to do the acts complained of, and all questions of regularity in the proceedings; that is, all questions whether the inferior tribunal has kept within the boundaries prescribed for it by the express terms of the statute law, or by the well settled principles of the common law."

The granting of wholesale licenses is a matter specially committed by act of assembly to the Courts of Quarter Sessions. Upon the writ of certiorari we may review their proceedings so far as to see whether they have kept within the limits of the powers thus conferred, and have exercised them in conformity

with law.   We are of opinion that those powers have been exceeded in this instance, and that upon the face of this record the petitioner was entitled to her license.

The order of the court below refusing it is reversed, and a procedendo awarded.

## L. HARRIS DRUG CO.'S PETITION.
## JOSEPH FLEMING & SON'S PETITION.
## T. D. CASEY & SON'S PETITION.

OPINION, MR. CHIEF JUSTICE PAXSON :

These cases are upon all fours with Pollard's Case, just decided.   We need not repeat what was there said.

The order refusing a license in each of the above cases is reversed, and a procedendo awarded.

## JOSEPH EINSTEIN & CO.'S PETITION, ET AL.

These cases were all applications for a bottler's license, under the act of May 24, 1887.   As we are unable to distinguish them in principle from Pollard's Case, just decided,

The order refusing such license is reversed in each case, and a procedendo awarded.