## Venango County Liquor Licenses.

*Liquor laws—Order refusing license—Hearing—Record—Review.*

1. An order refusing a liquor license in the following words: "after full hearing and due consideration, the within application is refused" raises the presumption that the applicant and the persons objecting to the application were accorded such a hearing as the statute entitled them to have—that is a hearing by evidence, petition, remonstrance and counsel, at a time duly fixed by rule or standing order of the court. The fact that the order does not set forth the court's reasons for refusing the application, is not an irregularity or defect; nor does it furnish any legitimate basis for withholding altogether, or denying full force to the presumption that the court performed its duty to hear and decide according to law.

2. The appellate court has no power to review proceedings relating to the granting or refusing of liquor licenses upon their merits.   The appellate court can only consider the record; but if the lower court sets forth in its final order or in an opinion accompanying the same the reason for which it refused the application, thus making it part of the record, and the reason thus set forth, is not a legal reason, its action will be set aside as being an abuse of discretion, and therefore not according to law.

3. An order refusing to grant any liquor licenses in a county will not be reversed as an abuse of discretion where the judge of the quarter sessions states his ground for refusal as follows: "A consideration of

the question with due regard to the number and character of the petitioners for and remonstrances against such applications, the evidence and arguments of counsel presented on full hearing, and the facts which are known to the court and common knowledge in the communities affected, has led to the conclusion that in the exercise of the discretion vested in it by law, the court should refuse all such applications and orders will accordingly be indorsed upon them, respectively, to this effect."

4. In such a case the fact that there existed in the county two cities and a borough constituting populous communities, is not in itself evidence that the court of quarter sessions in refusing licenses for the whole county proceeded upon an erroneous theory as to its discretionary power, or as to what constitutes legal necessity for a license.

Argued May 12, 1914.  Appeals, Nos. 3 to 25, both inclusive, April T., 1915, by Sarah L. James et al., from orders of Q. S. Venango Co., April T., 1914, Nos. 3–27, refusing all liquor licenses in Venango County.  Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.  Affirmed.

Petitions for liquor licenses.

CRISWELL, P. J., filed the following opinion:

The decisions of the various courts of quarter sessions and the differing administrations by them of existing license laws constitute an apparent medley that has been the subject of adverse comment and criticism.  A statement compiled from data obtained from clerks of such courts in the various counties of the state a few years ago showed that the number of licenses granted in the different counties varied from one to every 173 of population to one for something over 4,000 of population, with one county at the time having no retail licenses.  Since then in five or more counties of the state no licenses have been granted.  Considering the counties separately in which licenses are granted the same lack of uniformity prevails.  Large sections of them, having large populations, are without licenses, while in other sections, with less population, licenses are

granted liberally. An examination of the statute may disclose a reason for these apparently varied interpretations of the law.

Prior to 1867 the only discretion which the courts of quarter sessions had relating to the granting of such licenses was based upon the act of March 11, 1834, which provided first, that "no Court shall license any inn or tavern which shall not be necessary to accommodate the public and entertain strangers and travelers" and second, "no Court shall license any person to keep an inn or tavern unless from the petition and certificate or from their own knowledge or upon evidence sought for and obtained they shall be satisfied of the fitness of the person applying and the sufficiency of the accommodations as aforesaid," such as having a certain number of bed rooms and beds for the exclusive use and accommodation of strangers and travelers. If the house was a public necessity the license issued. By the act of March 22, 1867, these provisions were changed and it was provided that "it shall be lawful for said Court to hear petitions, in addition to that of the applicant, in favor of, and remonstrances against the application for such license, and, in all cases to refuse the same whenever, in the opinion of said court, having due regard to the number and character of the petitioners for and against such application such license is not necessary for the accommodation of the public and entertainment of strangers and travellers." From this language it will be observed that the duty of the Court was shifted from an inquiry as to the necessity of the house for public accommodation to an inquiry as to the necessity of the license for such accommodation, and it was made lawful for the court, whenever in its opinion, having due regard to the number and character of the petitioners and remonstrants, such necessity did not exist, to refuse the application. As suggested by GALBREATH, J., in 1913, the question of necessity for the license is lifted out of the realm of legal fiction into the domain of actual fact

to be determined as any other fact by the preponderance of the proofs. In the original draft of the so-called "High License Act" of 1887 this provision of the law was entirely omitted, but while the bill was pending in the senate an amendment was made incorporating therein, with some changes, the provisions quoted of the act of 1867. The changes referred to limited the petitions and remonstrances to residents of the ward, borough or township, but otherwise increased the force and effect of the act by providing, not that it might be lawful for the courts to hear such additional petitions and remonstrances, but that such courts shall hear them, and by further providing, not that it might be lawful for the courts to refuse the applications, but that they shall refuse them when in their opinion, having due regard to the number and character of the petitioners and remonstrants, the licenses prayed for are not necessary for the public accommodation, or the applicants are unfit persons, the scope of the petitions being extended to cover the fitness of the applicant as well as the necessity for the license. The act of 1887 further provides that persons applying or making objections "may be heard by evidence, petition, remonstrance or counsel." Thus the statute law relative to retail licenses remains to-day, and that relative to wholesale licenses is practically the same, under the act of 1891, except that petitioners and remonstrants may reside any place in the county. Relative thereto it is observed,

1. These provisions it is well settled do not constitute a local option law. If so, and the granting of licenses depended upon the number of names of residents appearing upon the petitions and remonstrances, respectively, the court crier, as has been said, might declare the result as well as the court, and, as is said in Sparrow's Petition, 138 Pa. 116–125, we would have local option without the sanction of law. Supplementing such petitions and remonstrances the court by the terms of the statute is required to hear the evidence of

witnesses and counsel, and "we have no doubt the court may in some instances act of his own knowledge. The mere appearance of an applicant for license, when he comes to the bar of the court, may be sufficient to satisfy the judge that he is not a fit person to keep a public house. The judge is not bound to grant a license to a man whom he knows to be a drunkard or a thief, or has actual knowledge that his house is not necessary for the public accommodation:" Raudenbusch's Petition, 120 Pa. 328–342. It is therefore not upon the petitions and remonstrances alone that the action of the court is based, but upon these, the evidence educed, the arguments of counsel and the personal knowledge of the court relative to the particular matter: Reznor Hotel Company's License, 34 Pa. Superior Ct. 525. While this is true it is also true that the local option principle is to a degree recognized in the direction of the statute that the court shall have due regard for both the number and character of the petitioners and remonstrants. This thought has the express approval of the Supreme Court in Indiana Brewing Company's License, where it is said by ELKIN, J., "Having due regard to the number and character of the signers does not mean that in a judicial proceeding the issue resolves itself into a problem in arithmetic in which the court simply adds the columns and announces the result. In the granting of licenses to retail and wholesale dealers the question of necessity, applicable alike to corporations and natural persons, is of first importance, and in such cases nearly every resident of a community has a fixed opinion upon this question, which can as well be indicated by signing a petition or remonstrance as in any other manner. In an issue of this kind the number and character of the signers should have great weight with the court:" 226 Pa. 56–61. "The act does not require that either the petitioners or remonstrants should be voters; it is enough that they be citizens whether male or female, hence it is a mistake to pass over women, and count

only voters:" Reed's App., 114 Pa. 452–463. This was said of the act of 1867, but it is equally applicable to the act of 1887.

2. The discretion conferred by the statutes is vested in the courts of quarter sessions of the several counties and not in any other court. This discretion relates chiefly to two things,

(a) The fitness of the applicant.

(b) The necessity for the license prayed for.

Neither the Supreme nor Superior Court has ever yet assumed the right to either revise or review a judgment of a quarter sessions court properly based upon either of such points. On the contrary, they have repeatedly declined to do so. In Gross's License, 161 Pa. 344–347, it is said by Judge DEAN, speaking for the court, "The discretion must be exercised in a lawful manner. The applicant hath a right to be heard and so have objectors. A decree without a hearing or opportunity for hearing at a time fixed by rule or standing order as the law directs would be manifestly illegal and on certiorari would be set aside." Then follows this plain statement: "If the court has in a lawful manner performed the duty imposed upon it, it is not our business to inquire whether it has made a mistake in its conclusions of fact. Whether the same facts induce in our minds the same belief as in that of the court below, as to the character of the applicant or other material averments, is wholly immaterial; it is the discretion of the court of quarter sessions, not ours, that the law requires." "That responsibility they (the quarter sessions courts) cannot evade by throwing it upon the remonstrants, or upon this (the Supreme) Court:" Sparrow's Petition, 138 Pa. 116–125. In Knarr's Petition, 127 Pa. 554–556, it is said by WILLIAMS, J., in a case in which the Supreme Court was asked to compel by mandamus the granting of a license: "We have repeatedly said that the office of a mandamus is to require the performance of a judicial function, not to regulate the mental process of a

judge. (If he refuses or neglects to hear, we may enjoin upon him the performance of that duty; but, when he has heard and decided, we cannot require him, unless in extreme cases, to lay his modes of reasoning and his moral standards before us, that we may revise his discretion and substitute our own.")    The "extreme cases" here referred to is held in "Donoghue's License," 5 Pa. Superior Ct. 1, to refer only to cases where the license judge has acted on reasons which the law does not recognize as valid and departed from the standard created by the statutory provisions.

3. From the foregoing it appears that the legislature, unwilling apparently to assume the responsibility of declaring definitely that no licenses shall be granted, or in what cases they shall be granted and in what refused, or to adopt any plain or definite rule in reference thereto, has shifted the entire responsibility of so doing upon the several courts of quarter sessions of the commonwealth, giving to them a discretion unlimited, except, as ruled by the Supreme Court, that it is to be exercised in a judicial manner.    Speaking of this discretion AGNEW, J., in Schlaudecker v. Marshall, 72 Pa. 200–207, says: "This is a large discretion and it is to be exercised primarily for the public good and secondarily for the private interest."    In Mead's License, 161 Pa. 375, in disposing of an application for a wholesale license the court below found that it was not necessary, considering in connection therewith "the best interests of the community and the county at large," and in reference to this the Supreme Court said: "If this is not the exercise of a sound discretion, such as is contemplated by the act of 1891, and the decisions of this court, we are unable to say what is meant by the expression." This is quoted as authority in Donoghue's License, supra, by the Superior Court.    But in no reported case has either of the appellate courts undertaken to determine or indicate in any definite way what may properly be taken into consideration, in the exercise of this

discretion by the quarter sessions court, in determining whether or not a license is necessary at any given place for the accommodation of the public and the entertainment of strangers and travelers, or, stating the question in a little different way, whether or not intoxicating liquors are necessary at any such place for the accommodation of the public and the entertainment of strangers and travelers. Unless it affirmatively appear to the satisfaction of the court that there is a reasonable necessity for the purposes indicated the mandate of the statute is that the application for a license shall be refused. It is true that some general expressions are found in the reported decisions of the higher courts which have been regarded as to some extent pointing the way to be followed by the quarter sessions in the exercise of such discretion. One of these has been unwittingly misquoted by Judge REED, of Jefferson county, in his recent opinion on the subject. He says: "It is not apparent to me how any judge, on the ground of necessity, can refuse all licenses. If he does the Supreme Court says (1) that he errs as widely as the judge who grants all applications; and (2) that in so doing he is asserting a mere despotic power." This evidently has reference to the language of Judge DEAN in Raudenbusch's Petition, supra, where it is said: "A judge who refuses all applications for license, unless for cause shown, errs as widely as the judge who grants all applications. In either case it is not the exercise of judicial discretion but of arbitrary power." The difference between Reed's statement and that by Dean is the difference between doing a thing arbitrarily and doing it for cause shown, which is quite radical. The basis of judgments of courts generally is cause shown in some form. In Schlaudecker v. Marshall, 72 Pa. 200, it is said that "the law of the land has determined that licenses shall exist," but they are to exist only when granted under the terms of that law by the proper court. These general statements while proper and to a

degree helpful are not definitely so and were not so intended. They leave untouched the question as to the number to be granted, when a legal necessity for a license exists and when it does not, and leave broadly upon the courts of quarter sessions a responsibility for these things perhaps not always sufficiently appreciated. To state definitely what constitutes legal necessity as used in the statute is probably about as difficult as to state in like manner what constitutes negligence or fraud, something which the courts as yet have not been able to do.

4. The question of necessity is a preliminary one which the court must pass upon before reaching that as to the particular licenses, if any, which shall be granted. In Raudenbusch's Petition, supra, it is said that "an investigation of this question has no particular bearing upon the petitioner's fitness to keep a saloon; it is a general one with which he has no more legal concern than any other citizen of the ward. The question is one of public concern; the petitioner is no party to it in the sense that persons are parties to private litigation." Yet he is a party in the sense that if the necessity is not made to appear the license should be refused: Reznor Hotel Company's License, supra.

While intended to meet a demand and supply a want regarded by the law as proper for accommodation there are, according to the common experiences of men, incidents inseparably connected with the exercise of the privilege conferred by the grant of license, which affect the public welfare and are regarded by many as grave. Being so connected and related they may properly be weighed in the balance as against the demand for a license, in determining whether or not a legal necessity for the license exists. To fail to do so is to fail to exercise the discretion which the court possesses relative to the grant of licenses primarily in the public interest. An institution licensed to vend intoxicating liquors in a community is to be viewed as it exists, having in view

the purposes good and, bad which it serves and promotes. To fail to do so and to regard as proper for consideration only its useful or unobjectionable functions is to do violence not only to the adjudged law of the state but to the common sense and instincts of men. It is axiomatic that the purpose of all government is the promotion of the public good and that laws should be construed with that purpose in view. This thought was anciently expressed by the maxim, Salus populi suprema lex. While therefore, necessity for liquors depends primarily upon the demand therefor, the effect of any such demand in moving the court, in the exercise of its discretion, to grant a license, is necessarily modified by the considerations to which reference has been made. In the investigation and determination of these matters an applicant for either a new or renewal license has no standing to arrogantly insist upon a grant to him. There has never as yet been recognized any aristocracy of privilege along such line. There is no presumption that an applicant is entitled to a license and neither he nor any other person in this state has any property in the right to sell liquor: Raudenbusch's Petition, supra.

5. In the investigation of the question of the necessity for the different licenses prayed for witnesses were called who based their opinions upon observations made from different standpoints. Some viewed the business from the inside standpoint, regarding sales as legitimate commercial transactions. This class includes those directly interested as licensees, dealers in liquors or owners or lessors of the licensed premises. Others having the patronage of the houses in their- varied forms and profiting thereby, viewed the traffic from their standpoint and held a sympathetic attitude towards it very similar to that of the inside man. Others were habitues of the licensed places, accustomed to resort there for a social glass and general social purposes. These with still others who patronize the bars by the purchase of

liquors regarded them favorably and so testified. In addition to all these a number were called not apparently in any way personally interested financially or otherwise, except as citizens, but interested in various works, business and other enterprises in the vicinity, who expressed themselves favorably to the licenses. As against these a number were called, some of them likewise interested in and connected with the material interests of the locality but not in any way connected with or interested in the traffic in liquors, whose observations were made rather from outside standpoints. These had in view and gave prominence to the effect of the traffic upon the public peace and order, the individual and home life and welfare of the community, its manufacturing and business enterprises, and denied the existence of any necessity for the license, with its inseparable incidents, for the accommodation of the public and the entertainment of strangers and travelers. A necessity for the entertainment of strangers and travelers was strongly asserted but not less strongly denied. Much of the testimony was but little helpful to the court. Except as the conclusions stated were supported by reasons they amounted to but the abstract opinion of the witness, who might or might not have any sufficient reason therefor. Captain Hasson, with a few other witnesses for the petitioners, gave what are regarded as the reasons most entitled to weight and consideration by the court, and expressed the conviction that those who differed with him would experience disappointment on a test of their theories. Others with equal candor and approximately equal experience and opportunities for observation reasoned to a contrary conclusion. Of petitions and remonstrances it was said in Bowman's License, 167 Pa. 644: "It matters not that the number of petitioners and others in favor of the appellant's application greatly exceed the number opposed thereto." An instance where this rule may be recognized and applied may exist where a number of applications are

made for houses that are bunched in a ward, the business and residents of which are largely influenced thereby, but the same is surrounded by or there is closely adjacent thereto a larger public that will be necessarily and adversely affected by such licenses. Such larger public are entitled to a hearing upon such applications, not by petitions and remonstrances, it is true, but by other competent evidence and such evidence may, if its character so warrants, prevail over and neutralize any presumption otherwise arising from the petitions. In other words, the true rule is that stated in the case last cited as follows: "It is the quality rather than the quantity of testimony that often does and should prevail."

6. The claim that the hotel business cannot be profitably conducted without a license is not regarded as constituting a legal necessity therefor or legitimately entitled to a controlling weight in determining its necessity. Those who ride in chaises and desire Turkish rugs, private baths and expensive hotel accommodations should pay therefor what they are fairly worth, including a fair profit to the owner, and the owner should not charge therefor less than they are worth and make up his loss by giving to the man who pays him ten or fifteen cents for a drink of whisky less or worse whisky than he pays for. When this is done it simply indicates that such things have gotten out of their proper relations to each other and need readjusting on business principles. There are no better reasons for subsidizing the management of a hotel by the grant of a liquor license, than that of any other business of like public concern.

In noting the conclusions indicated in the foregoing we have not been careful to straightedge them with all the expressions contained in opinions heretofore rendered by this court on the general subject of liquor licenses. Such opinions were rendered upon the facts then before the court for consideration with the like integrity of purpose to follow the law which has inspired those now

expressed, and it is believed that they will be found to be in substantial harmony herewith. The law has not recently been changed but new facts and a changed aspect of old ones with a changed trend of sentiment and thought on the subject, bearing upon the important question of necessity for the licenses, have been presented and for the first time in the history of the county the court has been called upon to broadly consider and pass upon such question as it relates to all retail and wholesale applications. A consideration of such question in the light of the law as hereinbefore expressed, with due regard to the number and character of the petitioners for and remonstrances against such applications, the evidence and arguments of counsel presented on full hearing and the facts which are known to the court and common knowledge in the communities affected, has led to the conclusion that in the exercise of the discretion vested in it by law the court should refuse all such applications and orders will accordingly be indorsed upon them, respectively, to this effect.

The court is without jurisdiction under the law to pass upon the question as to the necessity for a brewer's license, and to the pending applications for such licenses no objections have been made on the ground of unfitness of the applicants.

It will be observed that in the foregoing the opinions of the appellate courts, and not those of the various quarter sessions courts, have been almost exclusively noted and commented upon. Those of the latter courts are not in harmony and for this reason necessarily do not furnish a safe guide.

It will be further observed that the provisions of the statute are such as to render the number of licenses, if any, granted in any county or community dependent largely upon the attitude of the local court and the people of such county or community on the subject, restrained and influenced but little by any adjudications of the appellate courts, thus bringing about the varied

results and lack of uniformity in administration noted in the first part of this opinion.

*Error assigned* was the order of the court.

*Wm. J. Breene*, with him *Edmond C. Breene*, *P. A. Wilbert*, *John L. Mattox*, *Griffen & McBride*, *A. B. Jobson*, *John M. McGill* and *Thomas McGough*, for appellants.—The appellate court in order to adequately review the alleged abuse of the judicial discretion will look to the opinion in order to determine whether or not the court below has "proceeded according to law," or whether the decision of the license court is based on grounds which the law does not recognize as valid: Donoghue's License, 5 Pa. Superior Ct. 12; Nolan's License, 47 Pa. Superior Ct. 551; Pollard's Petition, 127 Pa. 507; Mead's License, 161 Pa. 375; American Brewing Company's Petition, 161 Pa. 378; Indian Brewing Co.'s License, 226 Pa. 56.

The opinion ignores the indubitable fact that the applicants enjoyed a large and lawful patronage, that such patronage during the last year had materially increased, and the fact that if these licenses were necessary when the same court granted them in March, 1913, they certainly were equally so in March, 1914, and the legal rule that "necessity" depends upon the extent and character of lawful demand for liquors at the places sought to be licensed: Mead's License, 161 Pa. 375; Schlaudecker v. Marshall, 72 Pa. 200; Pollard's Petition, 127 Pa. 507.

The "necessity" based upon the indicated lawful demand cannot be disregarded by a consideration of the moral or political predilections of that class for whose accommodation licenses are not grantable nor by a consideration of the effect of licenses lawfully supplying that demand, because that effect is the result of the law, and if that effect is detrimental in point of public morals or economics, the proper place to correct the evil is in the legislature and not by judicial repeal.

The only right, under present law, which the "larger public" have in the license question is that licenses shall only be granted where legally necessary and that when granted they shall be conducted by a fit person in a fit place and according to law: Donoghue's License, 5 Pa. Superior Ct. 1; Babb's License, 2 Pa. Superior Ct. 38; Doberneck's License, 1 Pa. Superior Ct. 99; Pollard's Petition, 127 Pa. 507; Johnson's Petition, 156 Pa. 322; Kelminski's Petition, 164 Pa. 231; Gemas' Petition, 169 Pa. 43; Indian Br. Co.'s Petition, 226 Pa. 56.

*J. S. Carmichael* and *W. M. Parker*, with them *G. G. Martin*, for appellees.—The discretion of the court was properly exercised: Dowling's License, 55 Pa. Superior Ct. 497; Gross's License, 161 Pa. 344; Raudenbusch's Petition, 120 Pa. 328.

Whether the appellant be a fit person to have a license, whether a license is necessary at the place sought to be licensed, and whether the location of the place sought to be licensed is a safe or seemly place for a licensed house are matters of which the court may exercise its discretion, under the facts and circumstances of each particular case: Re Butler Co. License, 60 P. L. J. 305; Reznor Hotel Co. License, 34 Pa. Superior Ct. 525; Raudenbusch's Petition, 120 Pa. 328.

In the consideration of the larger question—the public good—the court is not limited to a consideration of the petitions for or remonstrances against the license; but should use its discretion under the evidence or facts of each case: Chester County License, 3 Pa. C. C. Rep. 304; Bowman's License, 167 Pa. 644; Gross's Appeal, 1 Pa. Superior Ct. 640; Quinn's License, 11 Pa. Superior Ct. 554; Hilleman's License, 11 Pa. Superior Ct. 567.

OPINION BY RICE, P. J., July 15, 1914:

These separate appeals are from orders refusing the appellants' respective applications for liquor licenses, some of which were for retail licenses and the others

for wholesale licenses. In discussing the appeals, they will be considered, first, in the light of the several records as they stood when the appeals were taken; secondly, in the light of the general opinion delivered by the president judge of the quarter sessions after the hearing and argument of the applications, a copy of which, upon appellants' motion and by order of the quarter sessions, was filed in each case after the writs of certiorari were lodged in that court and before the records were actually removed.

First. The record proper in each case comprises the petition for a license, certificate of electors, and bond, all admittedly in due form of law and regularly filed. It also shows the filing of remonstrances and additional petitions. The final order is in these words: "April 2, 1914, after full hearing and due consideration the within application is refused." It is to be legally presumed from this order, and is undisputed in fact, that the applicant and the persons objecting to the application were accorded such hearing as the statute entitled them to have—that is, a hearing by evidence, petition, remonstrance, and counsel, at a time duly fixed by rule or standing order of the court. None of the records exhibits any irregularity in the proceedings leading up to the final order; nor is there any defect in that. True, the order does not set forth the court's reasons for refusing the application; but no provision of the statute law or principle of the common law requires that they be set forth; therefore, the omission to state them in the order is not an irregularity or defect. Nor does it furnish any legitimate basis for witholding altogether, or denying full force to, the presumption that the court performed its duty to hear and decide according to law. "The act is an official one, performed by a public officer in the exercise of the functions of his office. The presumption in all such cases is that the officer performed his duty according to law; he is not bound to set out legal reasons for his action; he is only bound

to have them:" Gross's License, 161 Pa. 344.   It neces-
sarily follows that, if there were nothing before us but
the records proper, these orders must be affirmed.

Second. Preliminarily to discussion of the appeals
in the light of the general opinion filed, it will not be
out of place to make some general observations regard-
ing our revisory jurisdiction.   Prior to the Act of May 9,
1889, P. L. 158, which declared that all appellate pro-
ceedings in the Supreme Court theretofore taken by writ
of error, appeal, or certiorari should thereafter be taken in
a proceeding to be called an appeal, the rule was, that,
where a new jurisdiction was created by statute and
the court or judge exercising it proceeded in a summary
method or in a new course different from the common
law, the only mode by which the appellate court could
review its action was by the common-law writ of cer-
tiorari: Ruhlman v. Com., 5 Binney, 24.   Proceedings
such as those under consideration were within that
rule.   But the writ of certiorari was of limited scope.
It brought up only the record proper, and this did not
include the evidence or rulings upon questions of evi-
dence, because no bill of exceptions was allowed by
statute whereby they could be brought on the record:
Chase v. Miller, 41 Pa. 403.   These limitations of the
scope of the writ necessarily resulted in limiting the
jurisdiction of the appellate court in  administering it,
to the inquiry whether the court below kept within the
limits of its jurisdiction and proceeded with regularity
according to law.   It was always within the power of
the legislature to enlarge the revisory jurisdiction of
the appellate court over proceedings formerly review-
able only by certiorari, and in many instances this
has been done.   But no such enlargement of its juris-
diction in the review of the action of the quarter ses-
sions upon applications for liquor licenses has been made;
doubtless, because the legislature deemed it wise and
expedient, all things considered, to commit the grant-
ing and refusing of such applications to the sound ju-

dicial discretion of the court of the vicinage without appeal from its discretion to that of the appellate court. When the legislature shall deem it wise, if it ever shall, to invest the appellate courts with power to review such proceedings upon their merits, we may safely assume that it will provide a mode whereby the evidence adduced and the rulings made on the hearing may be brought on the record. Until that is done, the appellate proceeding in such case, though now bearing the name appeal, must remain subject to the limitations which applied to the common-law writ of certiorari. These are not merely technical, but are jurisdictional, limitations, and it is the dictate of reason that, in determining whether the lower court has kept within the limits of its jurisdiction, the appellate court be careful not to overstep the limits of its own jurisdiction. In technical strictness, the questions cognizable by the appellate court in such a proceeding as these are to be determined by the record of the court in which the proceeding was had, aided by such presumptions as immemorially have been applied to judgments of courts of record. There has been some contrariety of expression in the decisions, as to whether the opinion delivered by that court is part of the record. But it is well settled that, where the court of quarter sessions sets forth in its final order the reason for which it refused the application, thus making it part of the record, and the reason thus set forth is not a legal reason, its action will be set aside by the appellate court as being an abuse of discretion and therefore not according to law: Gemas's License, 169 Pa. 43. The same has been held, practically, where the court filed an opinion in connection with the order, or even after making the order, which was evidently intended to express its reason or reasons for refusing the application: Kelminski's License, 164 Pa. 231; Indian Brewing Company's License, 226 Pa. 56; Reznor Hotel Company's License, 34 Pa. Superior Ct. 525; Mead's License, 161 Pa. 375. We shall not undertake to recon-

cile all the cases bearing on the general questions, whether and under what circumstances the opinion is brought up by the certiorari, or to state a general rule upon that subject. Following the foregoing and other late precedents, we entertain no doubt that we are authorized, and it is our duty in the present instance, to examine the opinion filed in the court of quarter sessions, for the purpose of ascertaining the basis or grounds of the final order, which in each appeal is the sole matter assigned for error. To be more explicit, it will be examined for the purpose of ascertaining whether the appellants' contention, that the court abused its discretion, is sustained.

Their counsel state the question as follows: "Does a license judge abuse his judicial discretion where he refuses all applications on the sole ground of non-necessity, based and considered exclusively upon the conclusion that there is a growing sentiment against the liquor traffic generally and that the granting of liquor licenses in point of public economics, morals, law and order is detrimental to the communities affected?" If we could agree with the learned counsel that this is the question presented by the records or by the opinion, we should unhesitatingly agree with them that there was a misconception by that court of the nature and extent of its discretionary power and of the legal principles governing its exercise, and that the enforcement of that erroneous view, by its action, was not the exercise of a sound judicial discretion, but would be justly characterized, in the language of Agnew, J., in Schlaudecker v. Marshall, 72 Pa. 200, as a determination not according to law but outside of law and therefore not a legal judgment but the exercise of an arbitrary will. "A decree made arbitrarily, or in violation of law, it is our plain duty to set aside. For example, if a judge should refuse a license, because in his opinion the law authorizing licenses is a bad law, or if he should grant all licenses because he believed the law wrong as tend-

ing to confer a privilege on a special few, in either case there would be no exercise of judicial discretion; both would be the mere despotic assertion of arbitrary will by one in power, that sort of lawlessness which is least excusable and excites most indignation:" Gross's License, 161 Pa. 344. But, as already shown, the question as stated by counsel does not arise upon the records proper. Does it arise upon the opinion? In other words, is it fairly inferable, from the opinion, that the court determined that the licenses were not necessary exclusively upon the grounds that there is a growing sentiment against the liquor traffic generally and that the granting of liquor licenses is detrimental to the communities affected?

Near the end of the opinion appears this clause: "The law has not recently been changed but new facts and a changed aspect of old ones with a changed trend of sentiment and thought on the subject, bearing upon the important question of necessity for the licenses, have been presented and for the first time in the history of the county the court has been called upon to broadly consider and pass upon such question as it relates to all retail and wholesale applications." Even standing alone, this expression does not fairly warrant the conclusion that the court was moved to make the decisions it did by the growing sentiment against the liquor traffic generally; and any possible inference that it did so is wholly repelled by the next clause, which reads: "A consideration of such question in the light of the law as hereinbefore expressed, with due regard to the number and character of the petitioners for and remonstrances against such applications, the evidence and arguments of counsel presented on full hearing and the facts which are known to the court and common knowledge in the communities affected has led to the conclusion that in the exercise of the discretion vested in it by law the court should refuse all such applications and orders will accordingly be indorsed upon them, respec-

tively, to this effect." It is but a mere truism to say that courts must be guided by the will of the people, when this will has been expressed in the laws which the judges have sworn to administer. We cannot safely infer from this opinion that the court conceived that public sentiment and not the law was to control it in the exercise of the discretion vested in it. With regard to what the court said, in another part of the opinion, as to the weight to be attached to the petitions and remonstrances, there certainly can be no criticism. See Indian Brewing Company's License, 226 Pa. 56.

The opinion does indeed show that the court deemed it its duty to consider, and did consider, those incidents inseparably connected with the exercise of the privilege conferred by the grant of license which affect the public welfare. But it does not show that the court entertained and acted upon the erroneous view that a license to conduct a business having such incidents never can be necessary in a legal sense. On the contrary, the clear import of. the opinion is, that, in determining the question of necessity for the particular license sought for, the court should consider these inseparable incidents of the business as well as the demands of persons to whom a licensed dealer may lawfully sell liquors. To fail to do so, said the court, and to regard as proper for consideration only its useful or unobjectionable functions is to do violence not only to the adjudged law of the state but to the common sense and instincts of men. This general view is not erroneous. It does not involve the proposition that the word "necessary" in the statute is synonymous with "indispensable," or the equally indefensible proposition that the public accommodation which the law is intended to promote is to be ignored or treated as of little importance as compared with the objectionable features of the business; but only that both are to be given fair and impartial judicial consideration in connection with the other pertinent facts. Necessarily, it

seems to us, the difference in the nature of the business from that of many other commercial enterprises enters into the question. For example, in the administration of a law providing for the licensing of the sale of many staple commodities, it might well be considered that, if there be such demand for the commodities by consumers as would make the sale of them profitable to the licensee, the legal necessity for the license would be established. But it has never been authoritatively decided that this is the sole and conclusive test to be applied in determining whether a license to sell liquor as a beverage is necessary in a particular community, or how many licenses are necessary in that community. Such construction of the law would be in contravention of one of its express purposes, which is to restrain, and would lead to results which no one will contend would be for the public good or were so regarded by the legislature. It would, moreover, be opposed to the general rule enunciated in Schlaudecker v. Marshall, and approved in all later decisions, that the large discretion vested in the quarter sessions "is to be exercised primarily for the public good, and secondarily for the private interest." The opinion of the quarter sessions speaks for itself and we will not discuss it further. Suffice it to say, that, in our judgment, it does not, taken as a whole, warrant the inference as to the grounds of the court's decision of the question of necessity which the appellants ask us to draw; it does not overthrow the prima facie presumption arising from the records, that the court heard and decided according to law.

Third. One other feature of the case is to be noticed. Attention is called by appellants' counsel to the population of the county and of the two cities and the borough from which these applications came. These are facts of which this court may take judicial notice. It is argued, in effect, that the refusal of all licenses in these populous communities is itself evidence that the court proceeded upon an erroneous theory as to its

discretionary power or as to what constitutes legal
necessity for a license. Particular stress is laid upon
the declaration in the opinion of Schlaudecker v. Mar-
shall: "The law of the land has determined that licenses
shall exist." But when this expression is read with
the context, it is evident, we think, that what the
court meant is, that the policy of the commonwealth,
as embodied in and exhibited by its laws, is that the
sale of intoxicating liquors as a beverage shall be regu-
lated by license, not prohibited, and that the court is
to exercise its discretion in obedience to the settled
policy of the commonwealth as thus expressed, and
not according to his individual opinion upon the pro-
priety or impropriety of granting licenses. To construe
the expression to mean that the law makes it imperative
that some licenses shall be granted in every county of
the commonwealth, would be as unwarranted as to
construe it to mean that some licenses, if applied for,
shall be granted in every municipal subdivision of the
county. The statute contains no such mandate. Its
command is that the court shall give due hearing upon
each application, "and in all cases shall refuse the same
whenever, in the opinion of the said court having due
regard to the nature and character of the petitioners
for and against such application, such license is not
necessary for the accommodation of the public," etc.
If the due hearing and consideration of each application
and all the pertinent facts, in accordance with the ex-
press mandate and plain intent of the statute and the
general principles governing the exercise of judicial dis-
cretion, lead the court to the conclusion that that license
is not necessary, we fail to see how the fact that the
same result was reached in some or all the other appli-
cations can be regarded by the appellate court as a
sufficient reason for impeaching the conclusion. Hence,
while the argument from the fact that all the applica-
tions in this county were refused is pertinent and has
much force, it does not compel the conclusion that the

result could only have been reached by an abuse of the court's discretion.

As there was a judicial hearing at which each petitioner had an opportunity to be heard by petition, evidence, and counsel, and as it appears that the reason assigned by the court for the refusal of the license was a legal reason, and as it does not satisfactorily appear that the court's conclusion was reached by a consideration of matters which it had no right to consider, or by a refusal to consider matters which it was its duty to consider, we are not at liberty to conclude that there was an abuse of discretion: Nolan's License, 47 Pa. Superior Ct. 551. It is not our province to discuss or determine the correctness of the result reached. As has been declared repeatedly, it is the discretion of the court of quarter sessions, not ours, that the law requires.

The several orders are affirmed.