## In re Parson-Marnatti Post No. 95, etc.

*L. G. Brosius* and *Ross H. Pentz*, for appellant.

*James L. Jack*, Special Deputy Attorney General, for Liquor Control Board.

LONG, P. J., September 20, 1945.—This is an appeal by Parson-Marnatti Post No. 95 of the American Legion, Brockway, Pa., from the order of the Pennsylvania Liquor Control Board refusing its application for a club liquor license.

On the hearing before the court no witnesses appeared and testified, except appellant's adjutant and its commander. All other facts hereinafter stated were agreed upon by stipulation of counsel. From the evidence we find the following

### Facts

1. On August 3, 1929, the Court of Common Pleas of Jefferson County, at August term, 1929, no. 264, granted to appellant a charter for the following purposes:

"To uphold and defend the Constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred per cent Americanism; to preserve the memories and incidents of our association in the great war; to inculcate a sense of individual obligation to the community, State and Nation, to combat the autocracy of both the classes and the masses; to make right the master of might; to promote peace and good will on earth; to safeguard and transmit to posterity the principles of justice, freedom and democracy, to consecrate and sanctify our comradeship by our devotion to mutual helpfulness, and to receive and use by gift, grant and devise, real, personal or mixed property, and to use, lease, mortgage or sell the same pursuant to law, and for the purposes set forth herein."

2. Said corporation has kept up its organization continuously; it holds meetings at least once monthly; it now has 107 members, 65 or 70 of whom live in the Borough of Brockway.

3. It purchased the Brockway Hotel, which it has remodeled and made available with a seating capacity for at least 50 people.

4. Appellant alleges that it has complied with the requirements of the Liquor Control Board.

5. It made application to the Liquor Control Board for a club liquor license and a hearing was held, at which time counsel for appellant and the Liquor Control Board, respectively, stipulated that the license applied for is situate in the Borough of Brockway, Jefferson County, Pa.; the population of Brockway is 2,709 persons according to the 1940 decennial census; there are presently in effect in said municipality four licenses for the retail sale of liquor, malt or brewed beverages, excluding licenses issued to clubs and hotels; the quota of licenses for said municipality under the Liquor License Quota Act of June 24, 1939, P. L. 806, is three and at the present time the quota of licenses established by said act in said municipality is exceeded.

6. The Liquor Control Board filed an opinion setting forth, inter alia, ". . . at the said hearing, which was attended by the applicant and its counsel, the evidence adduced established the following facts:

"1. The Act of June 24, 1939, P. L. 806, provides for a quota of three retail licenses for the sale of liquor and malt beverages in Brockway, Jefferson County, and there are at the present time four such licenses in effect which are of the type counted against the said quota. Accordingly, the quota of retail licenses for the said municipality is exceeded.

"2. Brockway, Jefferson County, is amply provided with licensed places.

"Under the above related facts, the Board is of the Opinion that it should, in the exercise of the discretion authorized by the law, refuse this application for a new club liquor license. Therefore, the following order is made:

### Order

"And now, April 6, 1945, for the above reasons it is ordered and decreed that the club liquor license applied for by Parson-Marnatti Post #95, American Legion, for premises numbered 506 Main Street in the Borough of Brockway and County of Jefferson be and it is hereby refused."

7. Within the time prescribed by law appellant filed a petition for an appeal in the Court of Quarter Sessions of Jefferson County at the above number and term, wherein it set forth as the sole reason for appeal that, "After full hearing the Liquor Control Board did . . . refuse the said license on the ground that the quota was exceeded in the Borough of Brockway . . .", and that "the quota provision . . . does not apply to bona fide clubs . . ."

8. After hearing and argument the learned counsel for appellant further contended in his brief that under the facts stipulated before the board, "it had no power or authority to make a ruling based on its discretion", and "if the Liquor Control Act does authorize such a discretion, then that portion of the Act is unconstitutional . . ."

### Discussion

Under the Brooks High License Law, Act of May 13, 1887, P. L. 108, 47 PS §744-1, the wholesale and retail distribution of liquor was regulated solely by the courts of the Commonwealth in conformance with the provisions of the act of assembly. This was followed by the eighteenth amendment to the Federal Constitution and subsequent National prohibition, the twenty-first amendment to the Constitution of the United States

and the repeal of National prohibition. Soon thereafter came the Pennsylvania Liquor Control Act of November 29, 1933, Sp. Sess., P. L. 15, as amended and re-enacted by the Act of June 16, 1937, P. L. 1762, 47 PS §744-1.

The short title to the aforesaid act of assembly reads as follows: "This act shall be known, and may be cited, as the 'Pennsylvania Liquor Control Act'." The Act of 1933, Sp. Sess., P. L. 15, 47 PS §744-2, defines a club. The Pennsylvania Liquor Control Act, supra, sec. 3, 47 PS §744-3, provides for interpretation of the act. Clause (a) sets forth:

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

Clause (c), sec. 3, 47 PS §744-3, provides, inter alia:

"Except as otherwise expressly provided, the purpose of this act is to prohibit transactions in liquor, alcohol, and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the board, as herein specifically provided, and every section and provision of the act shall be construed accordingly."

Under section 201, 47 PS §744-201, the general powers of the Liquor Control Board are set forth. Clause (b) gave the board the power to control the "manufacture, possession, sale, consumption, importation, use, transportation and delivery of liquor", etc. Clause (d) gave the board power "To grant, issue, suspend, and revoke all licenses and permits, authorized to be issued under this act and the regulations of the board; . . ."

Section 202, 47 PS §744-202, gave the board general powers to make regulations. Section 203, 47 PS §744-203, defined the specific subjects on which the board may adopt regulations, and under clause (*h*) thereof the board is authorized to make regulations regarding the issuance of licenses and permits, and the conduct, management, sanitation, and equipment of places licensed or included in permits.

Section 401, 47 PS §401, authorized the board to issue liquor licenses to hotels, restaurants, and clubs in the manner defined therein, while section 402, 47 PS §744-402, provides that, "Every applicant for a hotel liquor license, restaurant liquor license, or club liquor license shall file a written application with the board", and defines what shall be set forth therein.

Section 403 of the Pennsylvania Liquor Control Act of 1937, 47 PS §744-403, provides, inter alia:

"Upon receipt of the application, the proper fees, and bond, and upon being satisfied . . . that the premises applied for meet all the requirements of this act and the regulations of the board, and the applicant seeks a license for a hotel, restaurant or club as defined in this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, may, in its discretion, issue a license . . ."

Section 404 of the act, 47 PS §744-404, provides for license hearings, and appeals from refusal of the board to issue, renew, or transfer licenses. The act sets forth:

". . . At such hearing, the board shall present its reasons for its refusal or withholding of license. . . . The board shall thereupon grant or refuse the license, renewal or transfer thereof. If the board shall refuse such license . . . following such hearing, notice in writing of such refusal shall be mailed to the applicant at the address given in his application. In all such cases, the board shall file of record at least a brief statement, in the form an opinion, of the reasons

for the ruling or order, and furnish a copy thereof to the applicant."

The act then authorizes the applicant to appeal to the court of quarter sessions, where the application shall be heard de novo.

Chief Justice Kephart, speaking for the Supreme Court in Commonwealth v. Stofchek, 322 Pa. 513, while discussing the Pennsylvania Liquor Control Act, said, inter alia (p. 520) :

"This State has adopted many acts aimed at the beneficial supervision of the traffic in intoxicating liquors. The Brooks High License Law of May, 1887, P. L. 108, restricted the trade in such liquors to licensed persons, and established certain rules for its conduct. Among the objections made to the Brooks' Law was that regulation was thereby taken out of the defined scope of the police power, in that the State by creating agencies for the sale of intoxicating liquors promoted rather than repressed a public evil. We dismissed this contention in Commonwealth v. Vigliotti, supra [271 Pa. 10]. . . .

"Appellant urges the same objection to this act, but the establishment of the Liquor Control Board and the State Stores merely supplants the licensing power and distribution medium of the Brooks Law. . . . The fact that the system carries regulation by State Liquor Stores to a higher degree than the licensing system, by placing the sale of liquor directly in the hands of the State, does not militate against the constitutionality of the act. It is rather in aid thereof, as the State can thus exercise a greater measure of control than was possible under the former system. Within the scope of the police power, a State may establish dispensaries for the exclusive sale of intoxicating liquors."

And at page 519:

" 'The police power is the greatest and most powerful attribute of government; upon it the very existence of the State depends. . . . If the exercise of the police

power should be in irreconcilable opposition to a constitutional provision or right, the police power would prevail.' It needs no constitutional reservation or declaration to support it. . . . One of its well known objects is the protection of public health, and laws prohibiting the import, export, sale or transfer of articles deleterious to the public, such as intoxicating liquors are valid under it. . . . What the State can prohibit entirely, it can regulate".

The learned counsel for appellant contend that the legislature has delegated powers of discretion to the Liquor Control Board beyond constitutional bounds. In Chester County Institution District et al. v. Commonwealth et al., 341 Pa. 49, Mr. Justice Linn, speaking for the Supreme Court, said, inter alia (p. 61) :

"The established principle is that while the legislature cannot delegate its power to make a law 'it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend': *Locke's Appeal*, 72 Pa. 491. The rule is sometimes stated in other words: 'The true distinction . . . is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter, no valid objection can be made.' " See Commonwealth v. Reitz, 156 Pa. Superior Ct. 122.

"In construing a statute the presumption is that it is a valid exercise of legislative power and the burden is upon one who attacks its validity to show a clear violation of the constitutional provision. 'The legislature is the sole judge of the wisdom and expediency of a statute, as well as of the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without importance to the court in determining

its constitutionality' ": Commonwealth v. Puder, 261 Pa. 129, 136.

Does the authority given the Liquor Control Board by the legislature permit the exercise of arbitrary power on the part of the board, or does it set up a standard to be followed? After having defined what constitutes a "club", the legislature sets forth the duties of the board. It gave the board the power to grant, issue, suspend, and revoke licenses and make regulations. It provided for applications for licenses, defined what should be set forth therein; that the board shall, where the license has been refused, fix a time and place for hearing the application for such license and file of record at least a brief statement, in the form of an opinion, of the reasons for the ruling or order, and furnish a copy thereof to the applicant. Thereafter the applicant may appeal to the court of quarter sessions, where the court shall hear the application de novo. Nowhere in the act can anything be found which would indicate that the legislature delegated its power to the Liquor Control Board to make a law. It made a law to delegate power to determine facts or a state of things upon which the law makes or intends to make its own action depend. It set up a standard for its board to follow. Administrative rules within the limits of the law are always permitted to an administrative board which is charged with enforcing the statute. See Buffalo Branch, Mutual Film Corp. v. Breitinger, 250 Pa. 225, Commonwealth v. J. & A. Moeschlin, Inc., et al., 314 Pa. 34, Plymouth Coal Co. v. Commonwealth of Pennsylvania, 232 U. S. 531, and Baldwin Township's Annexation, 305 Pa. 490.

The authority given the board by the legislature did not permit the exercise of arbitrary power by the former. It must follow the standard set up for it. Its action is subject to review for failure to exercise its discretion in accordance with the provisions of the act: Taylor v. Moore, 303 Pa. 469, Breinig et ux. v. Alle-

gheny County et al., 332 Pa. 474, 486, Huebner et ux. v. Philadelphia Savings Fund Society et al., 127 Pa. Superior Ct. 28, and Gima v. Hudson Coal Co., 310 Pa. 480. Consequently, the cases cited by appellant, Holgate Bros. Co. et al. v. Bashore et al., 331 Pa. 255, O'Neil et al. v. American Fire Ins. Co., 166 Pa. 72, and Soble et al. v. State Board of Pharmacy, 40 D. & C. 215, are readily distinguishable. In those cases there was an absolute delegation of power in violation of article II, sec. 1, of the Pennsylvania Constitution.

The issuance of licenses and permits under the conditions laid down by the legislative authority constitutes a ministerial or administrative function: Breinig et ux. v. Allegheny County, supra. Under its police power the Commonwealth, acting through its legislature, fixed standards for its Liquor Control Board and the board followed such standards. Therefore, what action did it take in the instant case which can be said to have been an abuse of its discretion under the facts and law involved?

Appellant was chartered in 1929. There is no evidence that it sought a license until the instant application was filed 16 years thereafter. Meanwhile, the Liquor Control Board had issued licenses to four restaurants and, as stated by counsel, to three clubs, for their respective premises. Appellant is now confronted with the Act of June 24, 1939, P. L. 806, sec. 2, 47 PS §744-1002, known as the Liquor License Quota Act, which provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one such license, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the

electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

After full hearing the Liquor Control Board refused the license for two reasons: (1) Because the quota for Brockway was exceeded, and (2) because Brockway is amply provided with licensed places. Based on the facts, it concluded that it should, in the exercise of the discretion authorized by law, refuse the application.

From the meager testimony adduced on the part of appellant on the hearing de novo we are unable to determine whether it has fully complied with all the statutory requirements, if we could exclude the reasons stated in the board's opinion for refusal, which would entitle it to a club license. However, it will be immaterial for us to determine this question for the reasons which we shall hereinafter state.

Appellant contends that the Liquor License Quota Act does not apply to clubs and that the Liquor Control Board has abused its discretion in refusing the license.

The Liquor Control Board contends, as the sole licensing agent, that the statute gave it discretionary power to refuse club licenses and that under its broad police power it exercised its sound legal discretion in refusing the license for the two reasons set forth.

Our appellate courts have held on numerous occasions that whether a license shall be granted and what licenses shall be granted are legislative questions and subject at all times to the control of the legislature; that a liquor license, even when granted, is not a property right; it is only a privilege. See Fanning's License,

23 Pa. Superior Ct. 622, 623, and Spankard's Liquor License Case, 138 Pa. Superior Ct. 251.

Under the Brooks High License Law the courts of quarter sessions had exclusive discretion in determining whether an applicant for a license was a fit person and whether the license applied for was necessary.

Since the Pennsylvania Liquor Control Act was enacted, the courts no longer constitute the licensing agency. The legislature having stated that its Liquor Control Board may, in its discretion, issue a club license and the board having found from the evidence that there already exists in the Borough of Brockway, with a population of 2,709 persons, four licensed premises for the retail sale of liquor, etc., excluding what the board then knew, three licensed clubs, and that Brockway is amply provided with licensed places, what grounds do we have on this hearing de novo to say that the Liquor Control Board abused its discretion?

There was a judicial hearing, at which time appellant was represented by counsel and was heard. It had the burden of proof. The board was confronted with the Liquor License Quota Act of 1939, supra. It was familiar with the provisions of that act. It could, and no doubt did, take into consideration the opinion of Judge Reno, Attorney General when the Act of 1939 was passed, and now Judge of the Superior Court, wherein the Attorney General held that the quota provisions thereof applied to clubs. No doubt it considered, among others, the opinions of the courts in the following cases: Judge Keller, of Bucks County, In re Nace-Kraft Post No. 255, etc., 49 D. & C. 531; Judge Knight, of Montgomery County, Pottstown Veterans Association License, 36 D. & C. 593, and Appeal of Pottstown Post 780, V. F. W., 50 D. & C. 491; Judge Smith, of Philadelphia County, Herbert Warriner Post No. 70's License, 43 D. & C. 6; Judge Laird, of Westmoreland County, Appeal of Arnold Post 684, November term,

1939, no. 17, not reported; Judge Sheeley, of Dauphin County, Appeal of Country Club of Harrisburg, no. 342 January sessions, 1941, not reported; Judge Sherwood, of York County, Seagrave Social Club's License, 37 D. & C. 575; Judge Windle, of Chester County, In re Ten to Six Club, 52 D. & C. 609; Judge MacDade, of Delaware County, In re Ukranian Catholic American Citizens Society, 51 D. & C. 467; Judges Iobst and Henninger, of Lehigh County, Ontario Tribe's License, 42 D. & C. 200; Judge Schaeffer, of Lancaster County, Appeal of Red Rose Lodge No. 16, etc., 43 D. & C. 204; and numerous other cases wherein the courts held that the quota provisions of the Act of 1939 applied to clubs and dismissed the appeals in the respective cases. Recently Judge Bell, of Clearfield County, in In re Lincoln Slovak Political Club, 52 D. & C. 564, sustained the action of the Liquor Control Board on the ground that the Liquor License Quota Act of 1939 applies to clubs.

After having found that the quota was exceeded, the board said as reason 2, "Brockway, Jefferson County, is amply provided with licensed places". The board knew that there already existed in Brockway seven licensed places. In Venango County Liquor Licenses, 58 Pa. Superior Ct. 277, the eminent Judge Rice entered into an elaborate discussion of the subject of the lower court's discretion in granting or refusing to grant liquor licenses. On appeals from the refusal of such courts to grant a license the appellate courts have held that, the legislature having made the courts of quarter sessions exclusive licensing agents, neither the Supreme nor the Superior Court has ever yet assumed the right to either revise or review a judgment of a quarter sessions court properly based upon either of such points. On the contrary, they have repeatedly declined to do so. In Gross's License, 161 Pa. 344, 347, it was said by Judge Dean, speaking for the court:

"The discretion must be exercised in a lawful manner. The applicant hath a right to be heard, and so have

objectors. A decree without hearing or opportunity for hearing at a time fixed by rule or standing order as the law directs, would be manifestly illegal, and on certiorari would be set aside." Then follows this plain statement:

"If the Court has in a lawful manner performed the duty imposed upon it, it is not our business to inquire whether it has made a mistake in its conclusions of fact. Whether the same facts induce in our minds the same belief as in that of the court below, as to the character of the applicant, or other material averments, is wholly immaterial; it is the discretion of the court of quarter sessions, not ours, that the law requires." Nolan's License, 47 Pa. Superior Ct. 551; Venango County Liquor Licenses, supra.

It follows that the reasons assigned by the Liquor Control Board for the refusal of the license were legal reasons. Nowhere does it satisfactorily appear that the board's action and conclusion was reached by a consideration of matters which it had no right to consider, or by a refusal to consider matters which it was its duty to consider. Consequently, we cannot say that the board abused its discretion in refusing the license for the combined reasons assigned by it.

Brockway is inhabited by a high class of citizens. No doubt many of these may feel disappointed at the applicant's inability to procure a license for the building which it has purchased and remodeled. However, its only redress, as the law now exists, is solely with the legislature and not with the courts.

We are compelled from all the law and the evidence to make the following

*Order*

And now, September 20, 1945, this appeal having come on for hearing de novo, testimony having been taken, after argument of counsel and due and careful consideration, the action of the Liquor Control Board is sustained and the appeal is dismissed at the cost of

appellant, without prejudice on the part of appellant to make such further application as it may deem proper at such time and in such manner as the act of assembly and rules and regulations of the Liquor Control Board may permit.